## UNITED STATES *v.* POWERS ET AL.

No. 687. Argued April 21, 1939.—Decided May 15, 1939.

*Mr. Charles A. Horsky,* with whom *Solicitor General Jackson, Assistant Attorney General McMahon,* and *Messrs. William W. Barron, Amos W. W. Woodcock, George F. Kneip,* and *Douglas W. McGregor* were on the brief, for the United States.

*Mr. John D. Cofer,* with whom *Messrs. Elbert Hooper, Myran G. Blalock, Jack Blalock, Clarence Lohman,* and *Robert E. Cofer* were on the brief, for appellees.

Mr. Justice Douglas delivered the opinion of the Court.

This is an appeal, under the Criminal Appeals Act of March 2, 1907, 18 U. S. C. § 682, and § 238 of the Judicial Code, 28 U. S. C. § 345, from a judgment of a district court sustaining demurrers and motions of the appellees to quash an indictment.

The indictment, filed September 17, 1938, charges appellees with violations of the Connally (Hot Oil) Act of February 22, 1935, as amended, 15 U. S. C. § 715 *et seq.*, and with conspiracy to violate such Act, 18 U. S. C. § 88. The various substantive counts charge that appellees, in violation of the Act, as amended, transported in interstate commerce from the Conroe Oil Field in Montgomery County, State of Texas, to Marcus Hook, Pa. certain petroleum products in excess of the amounts permitted to be produced, transported, and withdrawn from storage under the laws of Texas and the regulations and orders prescribed by the Railroad Commission of Texas. These transportations are alleged to have been made on various dates from November 4, 1935, to March 20, 1936. The conspiracy count charges a conspiracy by appellees to violate the Act, as amended, by producing, transporting, and withdrawing from storage petroleum in excess of the amounts permitted to be produced, transported, and withdrawn from storage under the laws of Texas and the regulations and orders promulgated thereunder. These transportations are alleged to have been made between the same places alleged in the substantive counts, on various dates from on or about September 4, 1935, to on or about March 15, 1937.

Sec. 13 of the Act of February 22, 1935, provided that "This Act shall cease to be in effect on June 16, 1937." This section was amended by the Act of June 14, 1937,

"by striking out 'June 16, 1937' and inserting in lieu thereof 'June 30, 1939'." No other amendments to the Act were made.

The single question before us is whether violations of this Act alleged to have been committed prior to June 16, 1937, may be prosecuted under an indictment returned subsequent thereto. The district court by sustaining the demurrers and motions to quash answered that question in the negative. We think it erred.

The Congress alone may declare whether those who, before June 16, 1937, violated the Act may be prosecuted thereafter. The question is one of the purpose of Congress. Explicit provisions in the amendment preserving the right of prosecution after the date originally set for expiry of the Act would have made that purpose clear beyond question. But the surrounding circumstances here make this purpose as clear and as unequivocal as an explicit provision. This is an Act designed to protect interstate and foreign commerce from the diversion and obstruction of, and the burden and harmful effect upon, such commerce caused by contraband oil, (as defined in the Act) and to encourage the conservation of deposits of crude oil within the United States. Administrative machinery is provided for the control of shipment or transportation of contraband oil in interstate commerce. §§ 4, 5 and 9. Such shipment or transportation is prohibited, unless on appropriate findings the President, by proclamation, lifts the prohibition. §§ 3 and 4. Penalties are provided for violations of the Act or any regulations prescribed thereunder. §§ 6 and 7. And § 10 implements the Act with civil and criminal procedures to enforce its sanctions. The Act is thus a self-sustained and organic whole, equipped to effectuate a declared policy of the Congress. By its original terms it would have expired June 16, 1937. But it never expired, for on June 14, 1937,

the whole Act was continued in effect until June 30, 1939. Its substantive phases were not altered one whit or tittle; its sanctions were neither reduced nor increased. Precisely the same acts continue to be prohibited after the amendment as before. The amendment merely perpetuated the entire Act for another term.

In view of these circumstances, it seems clear beyond question that it was the purpose of Congress, expressed in the amendment of June 14, 1937, to treat this Act precisely in the same way as if by its original terms it was to expire on June 30, 1939. Due to the amendment, the Act has never ceased to be in effect. No new law was created; no old one was repealed. Without hiatus of any kind, the original Act was given extended life. There was no First Connally Act followed by a Second Connally Act. During the periods in question there was but one Act. No evidence has been brought to our attention, and we have found none, that Congress proposed to waive or to pardon violations which occurred prior to June 16, 1937, but which were not prosecuted until subsequent thereto.

There is a secondary consideration which points to the same conclusion. If the appellees are right in their contention, a temporary act such as this one would lose, as a practical matter, some of its sanctions. Violations could occur with impunity months before its expiry, for in practice there frequently is an unavoidably substantial lag between violation and prosecution. The statute should not be so construed if another interpretation will make it effective. As this Court said in *Bird* v. *United States*, 187 U. S. 118, 124, "There is a presumption against a construction which would render a statute ineffective or inefficient or which would cause grave public injury or even inconvenience." We are unwilling to conclude that although the same acts continue to be prohib-

ited after June 16, 1937, as before, violations committed prior to that date are not punishable thereafter.

In view of this conclusion, we do not reach the nub of appellees' argument based on Chief Justice Marshall's statement in *The Irresistible*, 7 Wheat. 551, 552 "that an offense against a temporary act cannot be punished after the expiration of the act, unless a particular provision be made by law for the purpose." For in this case, as we have said, the Act of February 22, 1935, did not expire on June 16, 1937.

But even if we assume the validity of that statement, it seems to us clear that though the Act be treated as having expired or terminated on June 16, 1937, the result is the same. For in this case "particular provision" has been made "by law for the purpose" of extending the enforcement machinery with reference to prior criminal violations. The "particular provision" was the amendment of June 14, 1937, extending the effective period of the Act. That amendment was passed prior to the original expiration date. When read in light of the title of the amendatory statute, viz. "An Act to continue in effect until June 30, 1939, the Act . . . approved February 22, 1935," the statement of purpose becomes plain and unambiguous. If the amendment of June 14, 1937, had merely "extended" the duration, or postponed the expiration, of § 10 of the Act dealing with criminal penalties, "particular provision" for subsequent prosecutions would have been indubitably clear. The fact that all sections, including § 10, were extended makes it nonetheless plain. The whole, though larger than any of its parts, does not necessarily obscure their separate identities.

In view of these various considerations, we hold that this prosecution does not offend the prohibition in Article I, § 9, cl. 3 of the Constitution against *ex post facto* laws.

*Judgment reversed.*