**UNITED STATES ex rel. IOANNIS et al. v. GARFINKEL, Divisional Director, Immigration and Naturalization Service.**

Nos. 1898–1904, 1909–1915.

District Court, W. D. Pennsylvania.

April 1, 1942.

Samuel Strauss, S. V. Albo, and Joseph D. Ripp, all of Pittsburgh, Pa., for petitioners.

W. Wendell Stanton, Asst. U. S. Atty., of Pittsburgh, Pa., for respondent.

McVICAR, District Judge.

The fourteen petitioners in the above cases each filed a separate petition for a writ of habeas corpus. The writ was awarded, an answer was filed in each case and a hearing was held.

At the hearing, the evidence disclosed that the petitioners were all Greek Nationals; that all of them were illegally within the United States; that the Department of Justice, which has the jurisdiction, supervision and control over the immigration of aliens entering the United States, 8 U.S.C.A. § 131, issued warrants of arrest during this month (March, 1942) against the petitioners, on the ground that they were illegally in the United States and were subject to deportation. Each of the petitioners offered a bond for his release, as provided for in 8 U.S.C.A. § 156. Each of said bonds was refused by the Attorney General. Hearings have been held by the Department of Justice but no final order or decision has been made.

The evidence further disclosed that the petitioners are all men of good moral character and not likely to become public charges. The evidence further disclosed that it has been the custom of the Department of Justice to accept bonds of those who have been arrested on the same charges prior to March, 1942, and that in some instances the bond of the alien is accepted without a surety.

Petitioners contend that the Attorney General, under the act aforesaid, is required to accept a satisfactory bond and that the word "may" therein should be read as if the word "shall" was substituted therefor. Section 156, 8 U.S.C.A., relating to bond, provides: "Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Attorney General, conditioned that such alien shall be produced when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, and for deportation if he shall be found to be unlawfully within the United States."

■ The words in a statute are to be interpreted in their ordinary and usual meaning unless the language of the statute clearly indicates that the word or words were used otherwise. There is nothing in the statute before us that indicates that it was the intention of Congress that the word "may" should be used other than in its ordinary and usual sense, and we do not find anything therein which would require this word to be interpreted the same as if it read "shall."

■■ There is a presumption against the construction of a statute which would render it ineffective or inefficient, or which would cause grave injury, or even inconvenience. United States v. Powers et al., 307 U.S. 214, 217, 59 S.Ct. 805, 83 L.Ed. 1245. It has been held that the word "shall" would ordinarily be construed as "may" as against the Government in a criminal statute. Richbourg Motor Co. v. United States, 281 U.S. 528, 50 S.Ct. 385, 74 L.Ed. 1016, 73 A.L.R. 1081. The statute before us is not a criminal statute but there are cogent reasons why the same rule of construction should apply.

In Wong Wing v. United States, 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140, it is stated: "We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid. Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation. Detention is a usual feature in every case of arrest on a criminal charge, even when an innocent person is wrongfully accused; but it is not imprisonment in a legal sense."

In United States ex rel. Zapp, et al. v. District Director of Immigration and Naturalization, 2 Cir., 120 F.2d 762, 765, the court had the same question before it which we are now considering, and in an opinion by Judge Clark, the court stated: "The natural interpretation of the language used, that the alien 'may be released under a bond,' would indicate that the release is discretionary with the Attorney General; and that appears to be borne out by other provisions of this section, as well as other sections of the immigration laws, where the choice of words appears to have significance. This is a long section, where the word 'shall' is used some eleven times, and

each time apparently with care. In fact its use in the first sentence of the section is illustrative; here it is stated that the deportations of the aliens 'shall, at the option of the Secretary of Labor (Attorney General), be to the country whence they came' or to the foreign port of embarkation. The language is thus apt to confer a limited discretion as to the destination only, while leaving the command to deport in full force. It does not, as relators claim, show a legislative formula to confer discretion; it does show care and discrimination in the choice of language." The court, in that case, considered prior cases, including Prentis v. Manoogian, 16 F.2d 422, where the Circuit Court of Appeals of the Sixth Circuit reached a contrary conclusion.

■ I am of the opinion that the word "may" as used in the statute now before us should be construed to mean what the word means in its ordinary and usual sense.

■ In two of the petitions, it is alleged that if the Attorney General had in his discretion the matter of accepting or refusing bond, the evidence disclosed that he acted arbitrarily and capriciously in refusing to accept a bond. The other petitioners made the same claim at the hearing. I do not agree with the conclusion contended for by petitioners. I cannot say that because the petitioners in these cases had been in jail from ten to twenty days, hearings having been held but no decisions made, that the refusal to accept a bond during this time was arbitrary or capricious.

There is another reason also for holding that the refusal of bonds in these cases was not arbitrary and capricious, and that arises by reason of the extraordinary conditions which exist in the United States during the present time. The petitioners are all Greeks, unlawfully in the United States. It has been found necessary for the protection of this country to require some of its citizens, as well as some alien enemies, to be transferred from their homes to distant places; it has also been found necessary to take many measures to protect the United States as against sabotage. These reasons and others which might be mentioned, make it such that I cannot say that the refusal to accept bonds in these cases was arbitrary and capricious.

For the reasons mentioned, I am of the opinion that the writ of habeas corpus, previously awarded in each case, should be discharged.