ENRIQUE IRIZARRY IRIZARRY, Petitioner, *v.* DISTRICT COURT OF PONCE, Respondent.

No. 15.—Argued July 18, 1944.—Decided July 28, 1944.

*Carlos E. Colón* for petitioner. *James Fleming, John M. Durbing, R. García Cintrón,* and *Eulogio Riera,* Counsel for the Office of Price Administration as *amicus curiae. R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for The People.

Mr. Justice Snyder delivered the opinion of the court.

The Federal Emergency Price Control Act of 1942—50 U.S.C.A. App. § 901 *et seq.*—created an Office of Price Administration under the direction of a Price Administrator. (Sec. 921.)  The Administrator was authorized, among other things, to establish by regulation maximum prices for commodities.  (Sec. 902.)

Section 904 makes it unlawful to sell any commodity in violation of any such regulation.  Section 925 makes it a crime, punishable by fine of not more than $5,000 and imprisonment for not more than two years, for anyone to violate willfully any provision of § 904.  Section 925 also provides that the United States district courts shall have jurisdiction of criminal proceedings for violations of § 904.  Section 901(c) provides that the Act "shall be applicable to the

United States, its Territories and possessions . . . '', which, of course, includes Puerto Rico.

Pursuant to the said Act, the Administrator established by regulation maximum prices for practically all commodities. Among these regulations was Maximum Price Regulation No. 183 fixing maximum prices for thousands of commodities sold in Puerto Rico. (7 F. R. 5620). On April 7, 1943, this Regulation was amended by Amendment 21. (8 F. R. 4351).[1]

After the aforesaid Regulation, as amended in April 1943, had gone into effect, the Legislature of Puerto Rico passed Act No. 31, Laws of Puerto Rico, 1943 (p. 82). It was entitled, "An Act to Cooperate with the Government of the United States in the Effective Prosecution of the War; to Enforce all Regulations, Orders and Price Schedules Issued or Adopted by the Office of Price Administration under the Provisions of the Emergency Price Control Act of 1942, as Amended by Public No. 729—77th Congress—Approved October 2, 1942; to Declare any Violation of such Regulations, Orders and Price Schedules a Misdemeanor and Prescribe Penalties therefor, and for other Purposes".

Sections 1, 2, and 3 of Act No. 31 read as follows:

"Section 1.—The People of Puerto Rico recognizes that the efficient enforcement of all the regulations, orders and price schedules issued or adopted by the Office of Price Administration, under the authority of the Emergency Price Control Act of 1942, as amended by Public No. 729—77th Congress—approved October 2, 1942, is necessary for the effective prosecution of the war and is in the interest of national defense and security, for which reason it declares to be the policy of the Government of Puerto Rico to cooperate in the enforcement of the price program of the Federal Government, insofar as that program is embodied in regulations, orders and price schedules which have been issued or adopted, or which may hereafter be issued by the Office of Price Administration under authority of the Emergency Price Control Act of 1942, as amended.

[1] The table of prices contained in said Amendment 21 was amended again on May 25, 1943, by Amendment 36 (8 F. R. 7354).

"Section 2.—Any person who wilfully performs any act prohibited, or wilfully fails to perform any act required by any provision of any regulation, order or price schedule issued or adopted by the Office of Price Administration under the authority of the Emergency Price Control Act of 1942, as amended, shall be guilty of a misdemeanor and, on conviction for the first offense, shall be fined not more than one thousand (1,000) dollars or imprisoned in jail for not more than one (1) year, or both penalties, in the discretion of the court, and for subsequent offenses shall be fined not less than one hundred (100) dollars, nor more than five thousand (5,000) dollars, or imprisoned in jail for not less than one (1) month, nor more than two (2) years, or both penalties, in the discretion of the court.

"Section 3.—The insular courts are hereby vested with jurisdiction over said offenses, and the duty is hereby imposed upon all district attorneys, judges, and peace officers in the island, to enforce the provisions of Section 2 of this Act."

On May 13, 1943, a complaint was filed in the Municipal Court of Ponce charging the petitioner with a violation of § 2 of Act No. 31. The complaint alleged that on May 9, 1943, he had sold garlic at retail at a price in excess of that established by the said Revised Regulation of Maximum Prices No. 183. The petitioner was convicted and fined in the municipal court. He appealed to the district court, where he filed a demurrer to the complaint, alleging that the insular courts do not have jurisdiction of the said complaint, as Act No. 31 is null and void. The district court entered an order overruling this demurrer. We granted certiorari under Act No. 32, Laws of Puerto Rico, 1943 (p. 84), to review this order of the district court, in view of the public interest involved in settling promptly the question raised by the petitioner.

The petitioner contends that Act No. 31 is void "because by its own terms and in its practical administration it is in substantial conflict" with the Federal Emergency Price Control Act. The petitioner apparently borrowed this language from *Luce & Co.* v. *Minimum Wage*

*Board,* 62 P.R.R. 431, where we said, citing *Puerto Rico* v. *Shell Co.,* 302 U. S. 253 (p. 440), ". . . in order that the federal act should exclude the insular law, it is not enough that the two statutes cover the same subject matter, but it is necessary that the insular law by its own terms or in its practical administration be in *substantial* conflict with the act of Congress, or manifestly infringe the public policy of the said statute".

The petitioner apparently concedes that the Insular Legislature, especially during an emergency, may enact under the police power legislation pursuant to which prices are fixed and controlled (See *Miranda* v. *District Court,* 63 P.R.R. 155, decided March 6, 1944; *People* v. *Díaz,* 62 P.R.R. 129, decided May 25, 1943). Indeed, while the Congress undoubtedly had the power to enact the Emergency Price Control Act under the war power (*Yakus* v. *United States,* 321 U. S. 414, 422), price-fixing legislation is more easily justified, constitutionally speaking, in ordinary times under state police power (See *Nebbia* v. *New York,* 291 U. S. 502). Be that as it may, both Congress and our Legislature have acted. And the petitioner does not challenge either Act *per se.* Rather he contends that our Act is void because it is in conflict with the Federal Act.

The petitioner's argument in synthesis is (1) that the Federal Act provides for exclusive jurisdiction in the Federal courts of criminal proceedings for violation thereof; and (2) that the penalties provided therein for such cases are more severe than those found in Act No. 31. But neither of these points truly meets the issue he raises. The insular Act does not undertake to divest the Federal courts of jurisdiction of criminal proceedings for violations of the Federal Act. Nor does it attempt to mitigate the punishment which may be imposed under Federal law. On the contrary, in passing Act No. 31, the Insular Legislature provided for an insular offense identical with the Federal crime established by

the Federal Act. Its authority to do so has not been—and, as we have seen, cannot be—successfully challenged. And since *Puerto Rico* v. *Shell Co., supra,* the mere fact that a substantially identical Federal criminal statute covering the same subject matter exists does not, without more, nullify the insular criminal statute. In disposing of that contention, the Supreme Court of the United States said in the *Shell* case at p. 271:

"Finally, it is contended that, if the local anti-trust act and the Sherman Act both stand, a conflict of jurisdiction between the federal courts and the local courts may result. But clearly there is slight, if any, ground for the apprehension. The local act simply confers jurisdiction upon the local courts to enforce that act. No attempt, of course, is made to confer jurisdiction upon those courts to enforce the Sherman Act, or upon the federal courts to enforce the local act. It is hard to see why a conflict as to which law shall be enforced and which jurisdiction shall be invoked should ever arise, since the officers charged with the administration and enforcement of both acts are, in the last analysis, under the control of the same sovereignty and, it well may be assumed, will work in harmony." [2]

Nevertheless, while the coexistence of both statutes is not in itself fatal to the insular statute, there still remains for inquiry the question of whether the Insular Act "by its own terms or in its practical administration [is] in *substantial*

---

[2] As hereinafter noted, we are assured by the Administrator, who has appeared here as *amicus curiae,* that, far from creating any conflict, the insular Act is of great aid in enforcing the Federal Act. However, we can visualize one problem if, without authority from the Administrator, a private individual or insular official files a criminal complaint in the insular courts against an offender whom the Administrator was planning to prosecute in the United States District Court for Puerto Rico under the Federal law with its severer penalties. The problem of former jeopardy, which would not exist if Puerto Rico were a state, would then be a serious one in view of our status as a territory (*Puerto Rico* v. *Shell Co., supra,* at pp. 264–6). But the Supreme Court of the United States did not let left that difficulty stand in its way in holding that insular and Federal statutes creating substantially identical crimes could coexist. And the statement of the Administrator quoted in the text of this opinion demonstrates that the question of former jeopardy represents little, if any, practical difficulty in the enforcement of both Federal and Insular Acts.

conflict'' with the Federal Act. It is difficult to believe that anyone could press seriously any such contention. The Federal Act is designed to prohibit profiteering and to stabilize prices in order to prevent inflation in time of war. To win that battle on the domestic front is as important to our ultimate victory in the present war as some of the battles now being waged on the fighting fronts by our armed forces. Insular Act No. 31 offers the cooperation of insular law and the insular courts to accomplish that laudable purpose of the Federal Act. Rather than conflicting with the Federal Act the insular law on its face furnishes the Administrator with additional resources to be utilized, in harmony with the facilities provided by Federal law, to carry out the policy laid down by Congress which the Insular Legislature has adopted as its own.

''If ever there could occur a state of facts justifying, even demanding, co-operative effort between the state and the nation''[3] we have it in this case. That this tender of cooperation by insular law has had a happy result in practice is evident from the following statement in the brief of the Administrator: ''It was precisely the Office of Price Administration for Puerto Rico which inspired Act No. 31, in order to make more effective the compliance, enforcement and administration of the national policy of price control. During the fifteen months in which the local statute has been in force, hundreds of persons who have violated this law have been prosecuted and convicted, and on no occasion has any conflict arisen between enforcement of the Insular Act and the Federal Act. On the contrary, the local legislation has proved to be of great aid in obtaining compliance with the maximum price regulations, first, because of the number of courts in which violations can be prosecuted; second, because of the simplicity and facility of procedure; and, third, because of the prompt disposition of the cases.''

---

[3] *Ex parte Lasswell*, 36 P.(2d) 678 (Calif., 1934) at 687.

█ A somewhat more serious question—although not raised by the petitioner—is the problem involved in the adoption by reference by the Insular Legislature of "regulations, orders, and price schedules which have been issued or adopted, or which may hereafter be issued by the Office of Price Administration under authority of the Emergency Price Control Act of 1942, as amended". (Section 1 of Act No. 31.)

We begin by pointing out that it is familiar practice for a state legislature to adopt by reference an existing Federal statute or statute of another state. No case, so far as we are aware—in the absence of specific constitutional prohibition to that effect—has held such legislation to be unconstitutional as an illegal delegation of legislative power (*Puerto Rico* v. *Rubert Co.*, 309 U.S. 543, 549; *Coens* v. *Marousis*, 119 Atl. 549 (Pa., 1923); Comments, Constitutional Law—Validity of State Recovery Acts Adopting Federal Codes, 33 Mich. L. Rev. 597; Notes and Comment, Constitutional Law: Delegation of Powers: The adoption by states of present and future Federal legislation, 20 Cornell L. Q. 504). Congress, we note in passing, has for nearly 150 years followed this practice of adopting by reference penal laws of states in which Federal reservations are located by providing that when something is done on a reservation which is not made penal by the laws of Congress but which under State law, if the State had jurisdiction, would be punishable, the act should be equally punished as wrongful if committed on the reservation (4 Stat. 115, which has been successively reenacted, the latest statute being found in 54 Stat. 234, 18 U.S.C.A. § 468).

The Insular Legislature clearly had the power to adopt by reference the existing Federal Emergency Price Control Act. We therefore turn to the problem involved in such adoption of prospective regulations to be promulgated by the Administrator. But here we find that such action in-

volves no delegation of legislative power whatsoever. The Legislature, in adopting by reference the Federal Act, has laid down broad standards, which the Supreme Court of the United States has upheld despite contentions that the Federal Act constitutes an invalid delegation of legislative power (*Yakus* v. *United States, supra; Bowles* v. *Willingham*, 321 U. S. 503). In also providing in effect that the Federal regulations to be promulgated by the Administrator under the Federal statute, shall also be insular regulations, the legislature has simply selected the Federal Administrator as the administrative official who shall have the power "to fill up the details" [4] within the broad but valid standards laid down in the law itself. Once we concede that the standard set up in the statute is valid and that the power to fill up the details may be delegated to an administrative official, the mere fact that the Legislature chooses to vest this power in an appropriate Federal rather than insular official does not in itself invalidate the statute or regulations. *Ex parte Lasswell*, 36 P. (2d) 678 (Calif., 1934), held to that effect in a well-reasoned opinion involving a similar situation under the National Industrial Recovery Act, as did the Court of Appeals of Ohio in *City of Cleveland* v. *Piskura*, decided February 28, 1944, in passing on a municipal ordinance incorporating, by reference, as in the instant case, the Federal law and regulations on price control.

As *Ex parte Lasswell, supra,* points out at p. 687:

"The problem then seems reducible to the following: There must be an overlying law which constitutes the primary standard. The function of the delegated power must be 'to determine some fact or the state of things upon which the enforcement "of the primary standard law" depends.'

"We have before us state and federal acts, both of which recognize a nationwide business collapse and its resultant trail of human misery. Both state and nation are attempting to rehabilitate

---

[4] Chief Justice Marshall in *Wayman* v. *Southard*, 10 Wheat 1, 42, as quoted in *United States* v. *Grimaud*, 220 U. S. 506, 517.

the interchange of produce. Both governments have decreed that this can best be done through the enactments of codes for business which shall be the standards of fair competition. These decrees are the overlying laws or the primary standards. The power to fill in the details is the delegated power.

"The incidental objection that the codes are not in being when their violation is made an offense is immaterial if the primary standard has been laid down. If the codes do not meet with the state's approval, the state may repeal the law and the codes fall with it. Nothing could be more obvious than that the filling in of details must of natural necessity be subsequent to the primary standard law, which provides that the violation of the filled in details of the primary standard shall constitute an offense.

"The incidental objection that the delegation of code prescription to the President of the United States on the ground that the state of California is a sovereign state and the President is in this sense a foreign official does not greatly impress us. The correlative rights of state and nation are of great importance, but we are a nation not an alliance of foreign states, and our President is not a foreign potentate.

"That the incidental powers may be delegated to a body or be measured by a standard not under the control of the state and that they may be subject to change are all well illustrated by *Ex parte Gerino, supra.*"

As the concluding paragraph just quoted indicates, the power to fill up details is an occasion validly delegated even to private bodies. (*Ex parte Gerino,* 77 P. 166 (Calif., 1904)). *A fortiori,* such delegation can be made to an official of the Federal Goverment by the Insular Goverment when both governments are united in their determination to enforce a policy common to both as embodied in legislation enacted by their separate legislatures. (See Mich. L. Rev. 597, *supra,* at pp. 599–604, giving countless illustrations of similar enactments by state legislatures incorporating by reference future regulations to be promulgated by Federal officials and stating that (p. 603) "Though this practice is quite common, as this illustrative material shows, the writer has not found a single decision by a state court of last resort holding that

state adoption of prospective federal administrative determinations under existing federal legislation which fixes an adequate administrative determination, is invalid as a delegation of legislative power.").[5]

▮ Finally, it might conceivably have been argued by the petitioner that the Federal Emergency Price Control Act was amended by the Congress recently, and that for Act No. 31 to incorporate the new Act by reference is unconstitutional as an incorporation by reference of future legislation (See 33 Mich. L. Rev. *supra* at p. 510 and cases cited in footnote 5; 20 Cornell L. Q. *supra* at p. 510 and cases cited in footnote 34). Aside from the fact that this case was instituted prior to the said amendment (cf. *People* v. *Ortiz,* 62 P.R.R 284), and assuming, without deciding, that we would be prepared to follow the cited authorities, we are not required to face that problem herein. Although the said amendments are not yet available in Puerto Rico, the Administrator has furnished us with a copy of the Conference Report thereon, which discloses, among other things, that the Federal Act has been amended by striking out "June 30, 1944" in the section of the Emergency Price Control Act providing for that terminal date, and substituting therefor "June 30, 1945". We therefore believe that language found in *United States* v. *Powers,* 307 U. S. 214, is appropriate here. There the Court said at p. 217: "Due to the amendment, the Act has never ceased to be in effect. No new law was created; no old one was repealed. Without hiatus of any kind, the original Act was given extended life. There was no First Connally Act followed by a Second Connally Act. During the periods in question there was but one Act."

---

[5] As the Administrator points out, "Puerto Rico is not the only jurisdiction where legislation of this nature has been adopted. Municipalities in Alabama, Illinois, Iowa, Kentucky, Louisiana, Michigan, New Jersey, New York, Ohio, South Carolina, and Wisconsin have adopted municipal ordinances and the State of Rhode Island has adopted a statute similar to the Puerto Rican legislation. See OPA Service page 400:501 *et seq.*"

In addition, it might well be urged that, whatever the rule with reference to the alleged abdication of sovereignty involved in state legislation adopting by reference prospective Federal legislation, there may be no constitutional objection to action by the Legislature of Puerto Rico, the agent of Congress, in delegating back to Congress, its creator, the authority to legislate it originally received from Congress.

The remaining contention of the petitioner may be disposed of briefly. He asserts that Act No. 31 violates § 256 of the Judicial Code (28 U.S.C.A. § 371) which vests in "the courts of the United States . . . exclusive of the courts of the several States" jurisdiction of all suits "for penalties and forfeitures incurred under the laws of the United States". As in his first point, this argument is based on the false premise that the Insular Legislature has undertaken to vest jurisdiction of violations of the Federal Act in the insular courts. Since Act No. 31 provides for an insular offense, the Legislature clearly was within its rights in providing for prosecution therefor in the insular courts (see *Puerto Rico* v. *Rubert Co.*, 309 U.S. 543, 449–50).

The writ of certiorari will be discharged.

Mr. Justice De Jesús did not participate herein.

