UNITED STATES of America
v.
Frank KURZENKNABE and
Albert Scher.
Cr. A. No. 263–55.

United States District Court
D. New Jersey.
Dec. 2, 1955.

Raymond Del Tufo, Jr., U. S. Atty.,
by Frederic C. Ritger, Jr., Asst. U. S.
Atty., Newark, N. J., for U. S.

Bracken & Walsh, by Joseph F. Walsh,
Newark, N. J., for defendant Frank Kur-
zenknabe.

WORTENDYKE, District Judge.

Defendants were indicted under the
provisions of Section 1010 of the Fed-
eral Criminal Code, 18 U.S.C. § 1010,
which provides that it is a criminal of-
fense for any person to make a false
statement in connection with certain
transactions with the Federal Housing
Administration. The indictment, which
was returned on September 7, 1955,
charges that on or about March 5, 1952

the defendants made a false completion certificate in order to obtain a loan insured by the Federal Housing Administration.

Defendant Kurzenknabe has moved pursuant to Rule 12(b) (1) of the Federal Rules of Criminal Procedure, 18 U. S.C., to dismiss the indictment as to him, upon the ground that his prosecution is barred by the Federal statute of limitations applicable to non-capital offenses. The defendant contends that such statutory period of limitation is three years and that this period expired as to the offense charged against him some six months before the indictment was returned. The Government takes the position that in 1954, before the three-year period had run with respect to the offense charged, Congress increased the statute of limitations for non-capital offenses from three to five years and that consequently the period during which the defendant might be prosecuted was extended beyond the date upon which the indictment was returned. This position of the Government, the defendant argues, results from an erroneous interpretation and application of the amending statute relied upon by the Government.

On March 5, 1952, the date on which the defendant is charged to have committed the offense set forth in the indictment, the statute of limitations applicable to that offense read as follows:

"§ 3282. Offenses Not Capital

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within three years next after such offense shall have been committed." 62 Stat. 828, 18 U.S.C. § 3282 (1948).

It will be noted that the quoted section by its terms does not apply to offenses for which a different statute of limitations is expressly provided. As no special statute of limitations exists for the offense here involved, Section 3282 governs. The number of non-capital offenses for which a special statute of limita-

tions is provided is relatively small and, for convenience, Section 3282 may sometimes be referred to below as the statute of limitations for non-capital offenses.

Were Section 3282 the only provision to be considered, undoubtedly the defendant's motion to dismiss would have to be granted, inasmuch as the indictment was not returned within three years from March 5, 1952. But Congress has amended the above provision by a section contained in Public Law 769, which became effective on September 1, 1954. The language of this amendment is as follows:

"Sec. 10. (a) Section 3282 of title 18 of the United States Code is amended by striking out 'three' and inserting in lieu thereof 'five'.

"(b) The amendment made by subsection (a) shall be effective with respect to offenses (1) committed on or after the date of enactment of this Act, or (2) committed prior to such date, if on such date prosecution therefor is not barred by provisions of law in effect prior to such date." P.L. 769, 68 Stat. 1145 (1945).

On its face, the language and purpose of Section 10 seem quite clear. Applying the amendment to the instant case, it would certainly appear that Congress extended the period during which an indictment might be returned against the defendant from March 1955 to March 1957.

The defendant contends that Section 10 of Public Law 769 has not affected the running of the statute of limitations insofar as he and the offense with which he is charged are concerned. Two arguments are advanced to sustain this contention. The first of these arguments is that Section 10 did not increase the limitation period except as to certain non-capital offenses enumerated elsewhere in Public Law 769. The second argument is that even if Section 10 did increase the limitation period for non-capital offenses generally, such increase does

not apply to offenses committed before the amendment became law on September 1, 1954, irrespective of the provision contained in subdivision (b).

There appear to be no reported decisions involving a consideration of the effect of Section 10 upon the three-year statute of limitations provided in Section 3282. It is true that in United States v. Laut, D.C.S.D.N.Y.1955, 17 F. R.D. 31, 36, it was noted, in passing on other matters, that the limitation period for non-capital offenses had been increased from three to five years by Public Law 769. There is no indication that any question was raised in that case as to the effect of the amendment.

## I.

To support his first argument that Section 10 of Public Law 769 did not effect an amendment of Section 3282 as it applies to the offense with which the defendant is charged, the defendant urges that Section 10 must be read in connection with the other sections of Public Law 769, which is an Act "To prohibit payment of annuities to officers and employees of the United States convicted of certain offenses, and for other purposes." An examination of the Act shows that, as its title indicates, the principal object of the law is to deny annuities and retired pay to certain Federal officers and employees. The defendant points to Section 1 of the Act which specifies by number particular sections of Title 18 the conviction of any one of which constitutes a ground for denying Federal retirement benefits. Without going into too great detail, the types of offenses specified as grounds for denying pension and retired pay to Federal employees are treason, espionage, sabotage, sedition, subversive activities, bribery, graft and felonies or perjury committed under particular circumstances. The offense with which the defendant is charged is not among the crimes specified in Public Law 769. Sections 2 through 9 of the Act include other grounds of a non-criminal nature as bases for the denial of retirement benefits (Section 2),

provision for the return of contributions (Section 3), restoration of rights upon pardon (Section 4), non-liability of disbursing officers (Section 5), definitions (Section 6), non-exclusive nature of Act (Section 7), removal of names from rosters (Section 8), and a separability clause (Section 9).

The argument pressed upon the Court is that only as to those crimes specifically enumerated in Section 1 does the enlargement of the statute of limitations provided in Section 10 apply. Although it is clear that the language of Section 10 contains nothing that would limit its application in the manner suggested, the defendant insists that the legislative history of the entire statute supplies what is missing in the way of restricting language, inasmuch as the history demonstrates that Congress had no intention of increasing the statute of limitations for non-capital offenses generally but that the increase provided by Section 10 was only designed to permit a longer time for the prosecution of offenses which might ultimately result in the denial of retirement benefits to Federal employees.

The rules governing the use of legislative history as a guide to statutory interpretation are that

"Where the language and purpose of the questioned statute is clear, courts, of course, follow the legislative direction in interpretation. Where the words are ambiguous, the judiciary may properly use the legislative history to reach a conclusion. And that method of determining congressional purpose is likewise applicable when the literal words would bring about an end completely at variance with the purpose of the statute." United States v. Public Utilities Commission of California, 1953, 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020.

It would be hard to say that the pertinent language of Public Law 769 is ambiguous, but the defendant takes the position that the words of Section 10, when

taken literally, produce a result which Congress never intended. Since the statute of limitations for the vast majority of non-capital offenses has never been more than three years, and since such period survived the comprehensive 1948 revision of Title 18 Crimes and Criminal Procedure, the defendant argues that it is most unlikely that it was the purpose of Congress to increase the period in a statute which did not deal with criminal procedure. On the other hand, it is, the defendant contends, quite natural that Congress intended Section 10 as an enlargement of the statutory period for those crimes enumerated in Section 1, as such enlargement would effectuate the purposes of Public Law 769. In spite of the fact that Congress is not limited to one relevant subject for each statute, the defendant's argument that a literal reading of the act brings about a result at variance with the purposes of the legislation seems substantial enough to warrant an examination into the legislative history of Public Law 769, with special attention to the background of Section 10.

█ Unfortunately, there are no Congressional Committee reports discussing the intended purpose or effect of Section 10. Although there are Committee reports dealing with Public Law 769, Section 10 was added by way of an amendment after these reports had been prepared. As a result, if an historical excursion is to be made, its extent must be sufficient to ensure that an erroneous conclusion will not be reached. Ample precedent exists for a thorough review of the legislative background of the statutory provision. Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489; United States v. Public Utilities Commission of California, 1953, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020; Schwegmann Bros. v. Calvert Distillers Corp., 1951, 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035.

In January 1954, Senator Williams introduced S. 2631 to prohibit payment of Government retirement benefits to persons convicted of certain offenses. The bill, which contained no provision with respect to the statute of limitations, was referred to the Senate Committee on the Judiciary. Apparently the Committee held no hearings on the bill and it was subsequently rereferred to the Senate Committee on Post Office and Civil Service. 100 Cong.Rec. 9876 (July 13, 1954).

Prior and subsequent to the introduction of S. 2631, two entirely separate bills were introduced to amend Title 18, § 3282 so as to increase the statute of limitations applicable to *all* non-capital offenses to which Section 3282 applies. The first one, S. 1451, read in its entirety:

"A bill to increase the statute of limitations for offenses not capital from three years to five years.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,

"That section 3282 of title 18, United States Code, is amended by striking out 'three' and inserting in lieu thereof 'five'."

The second, S. 3310, which was introduced by Senator Williams, read in its entirety:

"A bill to extend from three to five years the time within which certain criminal prosecutions may be commenced.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,

"That (a) section 3282 of title 18 of the United States Code is amended by striking out 'three' and inserting in lieu thereof 'five'.

"(b) Section 3748(a) of the Internal Revenue Code is amended by striking out 'three' and inserting in lieu thereof 'five'.

"Sec. 2. The amendment made by this Act shall be effective with respect to offenses (a) committed on or after the date on enactment of this Act, or (b) committed prior to

such date, if on such date prosecution therefor is not barred by provisions of law in effect prior to such date."

A subcommittee of the Senate Committee on the Judiciary held a hearing on S. 1451 and S. 3310 at which a representative of the Department of Justice testified. The Department of Justice representative expressed the view that a general increase in the statute of limitations from three to five years for *all* non-capital offenses under Title 18, as provided in the two bills under consideration, would be desirable. He pointed out that such increase was especially important in connection with corrupt practices, since the fact of the commission of such offenses usually remains undisclosed for a considerable period of time while the statute of limitations is running. As to other offenses, he did not believe the enlargement of the statute of limitations would result in any undue delay on the part of the Department of Justice in general criminal prosecutions.

In early July 1954, the Senate undertook consideration of H.R. 8300, a comprehensive bill to revise the internal revenue law of the United States. At this time, Senator Williams offered as an amendment to the bill, on behalf of himself, Senator Ferguson, and ten other Senators, the text of S. 3310, which, of course, included the provision for an increase from three years to five years of the statute of limitations for non-capital offenses. In the course of the debate on this proposed amendment, Senator Williams acknowledged that the increase of the limitation period would apply to non-capital offenses generally. Although the amendment was adopted, Senator Morse raised serious question about the advisability of indulging in a reform of criminal law procedure in a tax bill. 100 Cong. Rec. 9082-4, 9089-90 (July 1, 1954). This amendment of H.R. 8300 was subsequently eliminated in conference, an action which Senator Williams later criticized. 100 Cong.Rec. 11935-6 (July 29, 1954).

On July 14, 1954 Representative Cretella introduced H.R. 9909, a companion bill to S. 2631. The bill was referred to the House Committee on Post Office and Civil Service, which reported favorably thereon with certain suggested amendments. H.R.Rep. No. 2488, July 23, 1954, U.S.Code Cong. & Admin.News 1954, p. 3907. Neither H.R. 9909, the proposed amendments, nor the report made any reference to the statute of limitations. The bill was passed by the House and reached the Senate on August 4, 1954 where it was referred to the Committee on Post Office and Civil Service. The last mentioned Committee, to which S. 2631 had been rereferred, recommended the passage of S. 2631. H.R.Rep. No. 2231 (August 5, 1954). Again, no reference was made to the statute of limitations in either the bill, the amendments or the report.

On August 17, 1954 the Senate proceeded to consider H.R. 9909 in lieu of S. 2631. During the debate, Senator Williams, for himself, Senator Ferguson and another Senator, offered an amendment in the language of Section 10 as it appears in Public Law 769. 100 Cong. Rec. 14149 (August 17, 1954). It will be noted that this was the same language which had appeared in S. 1451, S. 3310 and the short-lived amendment to H.R. 8300. The discussion which followed the proposal of the amendment contained the following comments:

"Mr. Williams. Mr. President, the purpose of this amendment is to extend from 3 to 5 years the statute of limitations with respect to a certain list of crimes. The same amendment was previously agreed to by the Senate and attached to the tax bill, H.R. 8300. However, the amendment was not retained in conference.

"The amendment is very important. I think it is appropriate to include it in this bill which has already passed the House. *By so doing, we can expedite the consideration of both legislative questions before Congress adjourns.* Therefore, I

22

ask that the Senate agree to the amendment. (Emphasis supplied.)

"The Department of Justice has urgently requested that the amendment be accepted. In recent weeks the great need of this amendment has been pointed out in connection with cases involving former Government officials. Cases have been referred to the Department only to be returned with the notation that the statute of limitations had expired. As a result certain corrupt public officials will go unpunished.

\*   \*   \*   \*   \*   \*

"In discussing the need of extending the statute of limitations from 3 years to 5 years it must be remembered that ofttimes the corrupt act of the public official will go undetected months or perhaps even years. Therefore the need of a greater length of time than the existing 3-year limit is apparent.

\*   \*   \*   \*   \*   \*

"Mr. Ferguson. \* \* \* I hope the Senate will pass the House bill, as a proper way to deal with Government officers and employees who have been unfaithful to the trust reposed in them.

"Mr. Williams. I certainly agree; and I hope the Senate will also adopt the amendment to give the Department of Justice 2 more years to catch these individuals.

\*   \*   \*   \*   \*   \*

"Mr. Ferguson. I feel that the Statute of Limitations should be extended for that purpose. The new administration has taken over, and is investigating these cases. It would be sad if, while the administration is investigating these cases, the Statute of Limitations were to expire and these persons were permitted to go scot free.

"As to those with respect to whom the Statute of Limitations has not run on the day we pass the bill, the statute should be extended.

"Mr. Williams. That is correct." 100 Cong.Rec. 14149–51 (August 17, 1954).

The Senate thereafter adopted the amendment and passed H.R. 9099. 100 Cong.Rec. 14152 (August 17, 1954). On the following day the House of Representatives concurred in the Senate amendment without debate. 100 Cong. Rec. 14174–5 (August 18, 1954).

The foregoing legislative history indicates that on several occasions during the 83rd Congress attempts were made to amend Title 18, Section 3282 so as to increase the statute of limitations therein provided from three to five years for all non-capital offenses, except those as to which a different period was expressly provided by law.

While some of the remarks made during the course of the last attempt might, when taken alone, seem to indicate that the purpose of the amendment was solely to provide a greater opportunity for the prosecution of Federal employees in connection with bribery and corruption, so as to decrease the likelihood of such persons receiving annuities and retired pay, a full examination of the history of Section 10 makes it clear that Senators Williams and Ferguson were urging the adoption of a much broader change in criminal procedure upon the persuasive grounds provided by relating the amendment to the purposes of H.R. 9099. At the outset of his remarks in support of amending H.R. 9099, Senator Williams noted that the same amendment had been proposed by him, Senator Ferguson and ten other Senators during the consideration of a bill which had nothing to do with denying retirement benefits to Federal employees. He went on to request that the amendment be adopted so that both legislative questions (the denial of Federal retirement benefits and a general increase in the statute of limitations for non-capital offenses) might be considered before Congress adjourned.

█ On the basis of the above, it must be concluded that the Senate intended to

accomplish precisely what the literal words of Section 10 provide, that is, to increase the statute of limitations to five years for all non-capital offenses except those as to which a special limitation period is provided. Nothing shows that the House of Representatives acted favorably on the amendment with a different intent.

### II.

The defendant's second contention is that even if Section 10 increased the statute of limitations for non-capital offenses from three to five years, this in no way changed the period applicable to the defendant's alleged offense since it was committed prior to September 1, 1954, the effective date of Public Law 769.

The argument runs squarely against the language of subdivision (b) of Section 10, which reads in part:

"The amendment made by subsection (a) shall be effective with respect to offenses * * * committed prior to such date [September 1, 1954], if on such date prosecution therefor is not barred by provisions of law in effect prior to such date."

The defendant, pointing out that Congress did not set forth subdivision (b) as an amendment to Title 18, urges that subdivision (b) be disregarded. His theory is that if subdivision (b) be disregarded, then subdivision (a) cannot be applied to the particular offense charged against the defendant, since such application would give the enlargement of the statute of limitations a "retroactive" effect which would be unconstitutional as an ex post facto law.

■ There is nothing "retroactive" about the application of an extension of a statute of limitations, so long as the original statutory period has not yet expired. Such application does not offend the prohibition in Article 1, § 9, Clause 3 of the Constitution against ex post facto laws. United States v. Powers, 1939,

307 U.S. 214, 59 S.Ct. 805, 83 L.Ed. 1245, rehearing denied, 1939, 308 U.S. 631, 60 S.Ct. 66, 84 L.Ed. 526; United States v. Ganaposki, D.C.M.D.Pa.1947, 72 F.Supp. 982. An excellent discussion of this point by Judge Learned Hand appears in Falter v. United States, 2 Cir., 1928, 23 F.2d 420, 425–426.

■ In any case, the defendant's argument ignores two important matters. One is that the failure of Congress to include subdivision (b) in its amendment of Title 18, Section 3282 does not make subdivision (b) any less the law of the United States. As said in Stephan v. United States, 319 U.S. 423, 426, 63 S.Ct. 1135, 1137, 87 L.Ed. 1490:

"The fact that the words of 18 U.S.C. § 681 have lingered on in the successive editions of the United States Code is immaterial. By 1 U. S.C. § 54(a), 1 U.S.C.A. § 54(a), the Code establishes 'prima facie' the laws of the United States. But the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent."

And even if this were not so, nothing could constitute a clearer expression of the intent of Congress with respect to the application of subdivision (a) than the language of subdivision (b). In applying subdivision (a) this expression of intent could not be disregarded.

The only conclusion that can be reached is that Congress has increased from three to five years the statute of limitations for all non-capital offenses as to which no special period of limitation is expressly provided. This enlargement became effective on September 1, 1954 and applies to those offenses committed prior to that date as to which the statute of limitations had not already run.

The defendant's motion to dismiss the indictment as to him is denied. An appropriate order may be submitted.