**UNITED STATES of America,**
**Appellee,**

v.

**Steven Earl SHAVER, Appellant.**

**No. 74–1223.**

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1974.

Decided Nov. 1, 1974.

Joe T. Millsaps, Charlotte, N. C.
[Court-appointed], for appellant.

David B. Sentelle, Asst. U. S. Atty.
(Keith S. Snyder, U. S. Atty., on brief),
for appellee.

Before HAYNSWORTH, Chief Judge,
and FIELD and WIDENER, Circuit
Judges.

WIDENER, Circuit Judge:

The defendant, a fifteen year old ju-
venile, appeals his conviction of robbing
an FDIC insured bank in violation of 18
U.S.C. §§ 5031 et seq., and 18 U.S.C. §
2113(a), (b), and (d). He contends
that evidence seized from his father's
residence by police officers with a valid
warrant was tainted by an earlier alleg-
edly illegal search of the same premises
and should have been excluded at trial.
He further asserts that 42 U.S.C. §
1973bb, which declared the imposition of
a voting age greater than eighteen to be
a constitutional abridgement, has had
the effect of redefining the term "mi-
nority" as used in 18 U.S.C. § 5034.[1]

---

1. In relevant part, 18 U.S.C. § 5034 of the
Juvenile Delinquency Act in effect at the
time of the trial of this case provides as fol-
lows:

"If the court finds a juvenile to be a delin-
quent, it may place him on probation for a
period not exceeding his minority, or com-
mit him to the custody of the Attorney
General for a like period."

18 U.S.C. § 5034, as referred to in this
opinion, has now been superceded by Title V
of the Juvenile Justice· and Delinquency Pre-
vention Act of 1974, PL 93–415, effective
September 7, 1974. The section which now
deals with the disposition of juvenile delin-
quents is 18 U.S.C. § 5037 (Sec. 507, PL
93–415), which provides in part: "(b) The
court may . . . commit him to the cus-

Consequently, he contends that the court's sentence committing him to the custody of the Attorney General until the age of twenty-one is improper. We see no merit in either argument and affirm.

The facts are not complicated. On the morning of October 11, 1973, a young, masked male, armed with a pistol, robbed a branch of the American Bank & Trust Company at Waxhaw, North Carolina. Witnesses at the scene of the robbery described the suspect to the police as wearing a black ski mask, a small-brimmed light colored hat, and black gloves. Another witness informed police that a person of similar appearance and attire had departed an automobile aproximately one-fourth mile from the Shaver home and fled along railroad tracks in that direction. A bloodhound, brought to the scene, led police to the Shaver residence. Officers from the sheriff's department were admitted into the house by the defendant, where they spoke with him briefly and departed, leaving others nearby to observe the house. They returned in the afternoon with a search warrant and discovered in the attic a pair of shoes, a pillow case, and the money from the bank robbery. On the basis of this and other evidence, the district court found the defendant to be delinquent and sentenced him to the custody of the Attorney General for a period of five years, eight months and twenty-four days, or until his twenty-first birthday.

■ Shaver assigns as error the failure of the district court to suppress the evidence seized under the search warrant as fruits of an earlier, allegedly illegal, search conducted when the sheriff's officers first visited his home in the morning. But, while courts have required the exclusion of derivative evidence obtained as the indirect result of an unlawful search, see Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Staples v. United States, 320 F.2d 817 (5th Cir. 1963); United States v. Paroutian, 299 F.2d 486 (2nd Cir. 1962), we are not confronted with that situation here. Both the sheriff and the deputy sheriff who had entered the Shaver residence in the morning testified that no search was made of the premises at that time. The defendant did not deny that they were voluntarily admitted to the premises. Admittedly, nothing was taken on the earlier visit. And, in all events, the defendant admitted the officers did not look in the attic, the place the evidence was found, on the first visit. He testified: "Because they found the stuff in the attic the second time they come back, *and they didn't go up in the attic the first time.*" [Italics added]

In addition, because the affidavit accompanying the search warrant does not depend upon the officers' earlier visit but reflects ample evidence from independent and untainted sources to justify its issuance, the evidence seized thereunder is admissible. As the court observed in *Silverthorne,* even when the facts may have been improperly obtained, they do not necessarily "become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others. . . ." 251 U.S. at 392, 40 S.Ct. at 183. See also United States v. Barrow, 363 F.2d 62 (3rd Cir. 1966), cert. den., 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967); United States v. Sheba Bracelets, Inc., 248 F.2d 134 (2nd Cir. 1957), cert. den., 355 U.S. 904 (1957). But, of course, the government may not exploit the illegality. *Barrow,* 363 F.2d at p. 66.

tody of the Attorney General. . . . [C]ommitment . . . shall not extend beyond the juvenile's twenty-first birthday. . . ." We have quoted only the narrow parts of the new statute which would apply to facts of this case. Unless otherwise indicated, the sections of the Juvenile Delinquency Act mentioned in this opinion are those of the statute prior to the extensive 1974 amendments.

Shaver next contends that the court's sentence committing him to the custody of the Attorney General beyond the age of eighteen is improper since 42 U.S.C. § 1973bb, and impliedly the Twenty-sixth Amendment, redefined the term "minority" as used in 18 U.S.C. § 5034.[2] We find this argument unavailing. Congress' purpose in passing 42 U.S.C. § 1973bb was to reduce the voting age to eighteen in federal, state and local elections. Congress could have changed the term "minority" in other federal enactments but did not.[3] Had it sought to redefine "minority" as used in the Juvenile Delinquency Act, it could have amended 18 U.S.C. § 5034 when it adopted the Voting Rights Act Amendments of 1970, Pub.L. 91–285, 84 Stat. 318, or when it proposed the Twenty-Sixth Amendment. But it did not.

A secondary consideration points to the same conclusion. The purpose of the Juvenile Delinquency Act is to adjudicate status and provide remedial treatment for the juvenile delinquent. See, e. g., United States v. King, 482 F.2d 454 (6th Cir. 1973), cert. den., 415 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1974). If, however, an individual is a juvenile until his eighteenth birthday, 18 U.S.C. § 5031, but can be confined by the Attorney General only until the same date, the plain objective of the Act would be defeated. Because the rehabilitative period necessary for the juvenile involved would not be available, the Attorney General would likely resort to procedures other than that provided by the Juvenile Delinquency Act. In our view, the statute should not be so construed if another interpretation would make it effective. As the Supreme Court noted in Bird v. United States, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L. Ed. 100 (1902), "[t]here is a presumption against a construction which would render a statute ineffective or inefficient or which would cause grave public injury or even inconvenience." See also United States v. Powers, 307 U.S. 214, 217, 59 S.Ct. 805, 83 L.Ed. 1245 (1939).

Accordingly, the judgment of the district court is

Affirmed.

---

2. Although Congress did not undertake to define the term "minority" in 18 U.S.C. § 5034, those courts which have considered the question have unanimously given the term its common law meaning, i. e., the condition of being under twenty-one years of age. See United States v. Flowers, 227 F.Supp. 1014, 1015–1016 (W.D.Tenn.1963), aff'd 331 F.2d 604 (6th Cir. 1964). See also United States v. Minor, 455 F.2d 937 (6th Cir. 1972), cert. den., 406 U.S. 975, 92 S.Ct. 2426, 32 L.Ed.2d 675 (1972); United States v. Hall, 306 F. Supp. 735 (E.D.Tenn.1969); Fish v. United States, 254 F.Supp. 906 (D.Md.1966).

3. Cf. United States v. Duncan, 456 F.2d 1401 (9th Cir. 1972). Confronted with an analogous argument, the Ninth Circuit in *Duncan* refused to hold that the Twenty-sixth Amendment had the collateral effect of reducing the twenty-one year minimum age limit for federal jury service in the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq.