**STATE of Alaska, Appellant,**

v.

**Robert C. CREEKPAUM, Appellee.**

**No. A–1228.**

Court of Appeals of Alaska.

Feb. 13, 1987.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellant.

Michael A. Steinmann, Brice & Steinmann, Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

In this case, we are asked to decide whether a retroactive extension of the statute of limitations in a criminal case violates the constitutional prohibition against *ex post facto* laws. We conclude that it does.

On May 17, 1985, Robert C. Creekpaum was indicted for one count of sexual assault in the first degree in violation of AS 11.41.410(a). The assault was alleged to have occurred more than five years previously, on March 12, 1980. At that time, the general five-year statute of limitations was applicable to the offense. *See* AS 12.10.010. In 1983, the Alaska legislature enacted AS 12.10.020(c), which extended the five-year period in certain cases of sexual assault and abuse:

> Even if the general time limitation has expired, a prosecution under AS 11.41.410–11.41.460 for an offense committed against a person under the age of 16 may be commenced within one year after the crime is reported to a peace officer or the person reaches the age of 16, whichever occurs first. This subsection does not extend the period of limitation by more than five years.

In enacting this statute, the legislature expressly provided that the enlarged period of limitation was to apply retroactively to offenses committed during the five years immediately preceding the statute's effective date, October 17, 1983.[1]

Creekpaum moved for dismissal of his indictment on the ground that it was barred by the statute of limitations. He argued that AS 12.10.020(c) could not be applied to his case without violating the constitutional prohibition against *ex post*

---

1. Section 11, ch. 78, SLA 1983, Temporary and Special Acts. The express provision for retroactivity was required as a predicate to retroactive application of the new statute. *See* AS 01.10.100(a).

*facto* laws. The parties agreed that if the original five-year statute of limitations applied to Creekpaum, the charge would be time-barred.

Superior Court Judge Walter L. Carpeneti granted Creekpaum's motion for dismissal, concluding that retroactive application of the enlarged statute of limitations would violate the *ex post facto* prohibition. The state now appeals.

The United States and Alaska Constitutions prohibit *ex post facto* laws. *See* U.S. Const. Art. 1, § 10, cl. 1; Alaska Const. Art. 1, § 15. To be considered an impermissible *ex post facto* law, a criminal statute, "must be retrospective, that is, it must apply to events occurring before its enactment and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnotes omitted). "A law need not impair a 'vested' right to violate the *ex post facto* prohibition." *Id.* To be prohibited, however, the law must be substantive; no *ex post facto* violation occurs if the law is merely procedural and does "not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884). The central issue in this case is whether a criminal statute of limitations is substantive or procedural.

In granting Creekpaum's motion to dismiss, Judge Carpeneti concluded that an unfavorable amendment of the statute of limitations amounted to a substantive change in the law. Judge Carpeneti first looked to *ex post facto* cases decided by the United States Supreme Court. The Supreme Court has never decided the precise issue presented here. However, Judge Carpeneti did find guidance in general principles articulated by the Court in its *ex post facto* cases. The judge cited *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), for the rule that the *ex post facto* issue hinges on whether a retroactive change in the law is substantive or procedural. A substantive right may not be

abridged retroactively; this rule cannot be obviated by merely labeling as procedural a change in the law that is actually substantive. *Kring,* 107 U.S. at 240–41, 2 S.Ct. at 458–59. Judge Carpeneti found *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964, one of the Court's most recent *ex post facto* cases, to be particularly significant. There, the Court held that, for purposes of *ex post facto* analysis, it is irrelevant whether a right has "vested."

Judge Carpeneti next addressed case law from the federal circuits and from various state courts that have considered the issue; this case law points almost unanimously to the conclusion that a statute of limitations is procedural and not substantive. The judge correctly pointed out, however, that the seminal case on the issue, *Falter v. United States,* 23 F.2d 420 (2d Cir.), *cert. denied,* 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928), relies on the vested rights analysis that was rejected in *Weaver v. Graham.* He also correctly noted that most of the state and federal cases decided since *Falter* have simply cited that case as controlling authority, without questioning the validity of its rationale. For this reason, Judge Carpeneti did not find the case law from other jurisdictions to be persuasive.

Finally, Judge Carpeneti turned to Alaska case law. The judge noted that our supreme court, in *Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035, 1045 (Alaska 1981), characterized the statute of limitations as substantive, albeit in a slightly different context. Relying on *Nolan,* Judge Carpeneti concluded that a criminal statute of limitations creates a substantial right and that an unfavorable, retrospective change in such a statute is a prohibited *ex post facto* law.

On appeal, the state argues that Judge Carpeneti erred in reaching this conclusion. The state contends, first, that the court's decision is based on a mistaken interpretation of the difference between a "substantive" and a "procedural" right for purposes of *ex post facto* analysis. Second, the state asserts that the decision goes against the

clear weight of authority from other jurisdictions. Finally, the state maintains that the decision is not supported by Alaska case law. We will address each of the state's arguments.

The state places its primary reliance on the argument that Judge Carpeneti was mistaken in his view of the difference between a substantive and a procedural change in the law. According to the state, changes in the law are substantive only if they directly alter the elements of an offense or the punishment prescribed therefor:

> The state believes that, for *ex post facto* purposes, the distinction between "substantive" criminal law and "procedural" law is this: "substantive" law refers to statutes ... which define what acts are criminal, or which prescribe the punishments for criminal acts ... "procedural" law refers to all other aspects of the law affecting criminal proceedings.

With this premise as its starting point, the state attributes significance to the fact that Judge Carpeneti's opinion used the word "substantial" interchangeably with the word "substantive." In the state's view, this indicates a mistaken belief on Judge Carpeneti's part that a "substantive" change in the law includes any change that might make a difference in the outcome of a case, regardless of whether the change implicates the elements of the offense or the penalties provided therefor. The state reasons that, because a change in the period within which charges may be filed does not alter the elements of an offense, it is not "substantive" for *ex post facto* purposes, even though it might be "substantial" in its importance to the outcome of a criminal case.

To a limited extent, we agree with the state's argument. Not all changes adversely affecting a defendant can properly be classified as substantive for purposes of *ex post facto* analysis. The state is correct in asserting that the word "substantive" must be read, in context, to refer to the substance of the offense charged. A substantive change in the law, then, is one that places the defendant at a disadvantage in relation to the substance of the offense charged or the penalties prescribed for that offense. As the United States Supreme Court stated in *Thompson v. Utah*, 170 U.S. 343, 351, 18 S.Ct. 620, 42 L.Ed. 1061 (1898) (footnotes omitted): "[A] statute is *ex post facto* which ... in its relation to the offense or its consequences, alters the situation of the accused to his disadvantage."

Beyond this point, however, we part company with the state's definition of a substantive change in the law. Specifically, we reject the state's assertion that a change can be substantive only if it directly alters the elements of an offense or its prescribed punishment. In our view, this argument says both too much and too little—too much because the Supreme Court's *ex post facto* cases do not support it; too little, because it overlooks the fact that the Court, in deciding whether a change is "substantive," has often considered whether that change affects a "substantial" right of the accused.

While the United States Supreme Court has never expressly rejected an interpretation of the *ex post facto* prohibition as narrow as the one proposed by the state, neither has it adopted such an interpretation. Had the Court wanted to restrict the *ex post facto* clause to laws directly altering the elements of an offense or its prescribed penalties, it could have said so in plain and unequivocal language—language similar to that used by the state in its brief. Yet the Court has never cast the *ex post facto* prohibition in such an ironclad mold.

Certainly, the boundaries of the *ex post facto* prohibition have been narrowed by the Court over the years. Its earliest formulations of the prohibition were extremely broad. For example, in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), Justice Chase described the prohibition as applying to:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal .... 2nd. Every law that aggravates a crime or makes it greater than it was

when committed. 3rd. Every law that ... inflicts a greater punishment than the law [imposed for] the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

See also *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883).

The court later began to distinguish between substantive and procedural laws. Reflective of the earliest movement to narrow the *ex post facto* prohibition is Justice Matthews' dissent in *Kring v. Missouri*, 107 U.S. at 250–51, 2 S.Ct. at 467–68:

In respect to criminal offenses it is undoubtedly a maxim of natural justice, embodied in constitutional provisions, that the quality and consequences of an act shall be determined by the law in force when it is committed, and of which, therefore, the accused may be presumed to have knowledge, so that the definition of the offense, the character and degree of its punishment, and the amount and kind of evidence necessary to prove it, cannot be changed to the disadvantage of the party charged, *ex post facto*. And this equally applies to, because it includes, the matters which, existing at the time and constituting part of the transaction, affect its character, and thus form grounds of mitigation or defense; for the accused is entitled to the benefit of all the circumstances that attended his conduct, according to their legal significance, as determined at the time. All these are incidents that belong to the substance of the thing charged as a crime, and therefore come within the saving which preserves the legal character of the principal fact. But matters of possible defense, which accrue under provisions of positive law, which are arbitrary and technical, introduced for public convenience or from motives of policy, which do not affect the substance of the accusation or defense, and form no part of the *res gestae*, are continually subject to the legislative will, unless, in the mean time, by an actual application to the particular case, the legal condition of the accused has been actually changed.

The distinction between substance and procedure suggested in Justice Matthews' dissent is considerably broader than the distinction proposed here by the state, since Justice Matthews would include as "substantive" not only "the definition of the offense," but also "the amount and kind of evidence necessary to prove it...." *Id.*

In subsequent *ex post facto* decisions, the Court seems to have adopted a position consistent with that taken by the dissent in *Kring*. *See, e.g., Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898); *Duncan v. Missouri*, 152 U.S. 377, 14 S.Ct. 570, 38 L.Ed. 485 (1894); *Hopt v. Utah*, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). In keeping with the dissent in *Kring*, however, the Court's later cases do not strictly limit the *ex post facto* prohibition to laws altering the elements of or the punishment for an offense. In each case, the Court's language suggests that the prohibition is significantly broader. In *Thompson v. Utah*, for example, the Court said:

It is sufficient now to say that a statute belongs to that class [the class of prohibited *ex post facto* laws] which by its necessary operation and "in its relation to the offense, or its consequences, alters the situation of the accused to his disadvantage." Of course, a statute is not of that class unless it materially impairs the right of the accused to have the question of his guilt determined according to the law as it was when the offense was committed. And, therefore, it is well settled that the accused is not entitled of right to be tried in the exact mode, in all respects, that may be prescribed for the trial of criminal cases at the time of the commission of the offense charged against him. Cooley in his Treatise on Constitutional Limitations ... says: "But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to

insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. ... The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, *though it cannot lawfully*, we think, in so doing, *dispense with any of those substantial protections with which the existing law surrounds the person accused of the crime."* ... This court, in *Duncan v. Missouri*, said that statutes regulating procedure, *if they leave untouched all the substantial protections with which existing law surrounds the person accused of crime*, are not within the constitutional inhibition of *ex post facto* laws. But it was held in *Hopt v. Utah* ... that *a statute that takes from the accused a substantial right given to him by the law in force at the time to which his guilt relates* would be *ex post facto* in its nature and operation, and that legislation of that kind cannot be sustained simply because, in a general sense, it may be said to regulate procedure.

*Thompson v. Utah*, 170 U.S. at 351–52, 18 S.Ct. at 623 (citations omitted; emphasis added). Similarly, in *Mallett v. North Carolina*, 181 U.S. 589, 597, 21 S.Ct. 730, 733, 45 L.Ed. 1015 (1900) (emphasis added), the Court used the following language in rejecting an *ex post facto* claim:

Applying the principles established by these cases [prior Supreme Court *ex post facto* cases] to the facts of the present case, we think it may be concluded that the legislation of North Carolina in question did not make that a criminal act which was innocent when done; did not aggravate an offense or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the time of the commission of the offense; *and did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offense charged.*

Even the Court's narrowest formulations of the *ex post facto* prohibition are significantly broader than the restrictive formula urged by the state in this case. For example, *Hopt v. Utah*, 110 U.S. at 589–90, 4 S.Ct. at 209–10 (emphasis added), the Court, in holding that a change in the hearsay rules was procedural rather than substantive, stated:

The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute. *Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offense was committed, might, in respect to that offense, be obnoxious to the constitutional inhibition upon ex post facto laws.*

*See also Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

Furthermore, the Court has plainly stated that the distinction between a substantive and a procedural change in the law cannot be reduced to a simple formula but should instead be left to determination on a case-by-case basis. Thus, in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Court, although holding that a change in the law governing severance in criminal trials was procedural, cautioned:

[T]here may be procedural changes which operate to deny to the accused a defense available under the laws in force at the time of the commission of his offense, or which otherwise affect him in such a harsh and arbitrary manner as to fall within the constitutional prohibition. But it is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited. . . .

Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or

stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.

269 U.S. at 170–71, 46 S.Ct. at 68–69 (citations omitted).[2]

The narrow reading of the *ex post facto* clause suggested by the state in this case is inconsistent with more than just the general language of the Supreme Court's decisions. In at least two cases, the Court's holdings are squarely at odds with the notion that the *ex post facto* clause applies only to statutes that alter the elements of an offense or the punishments prescribed for that offense.

In *Kring v. Missouri*, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), Kring was originally charged with first-degree murder. He eventually pled guilty to second-degree murder, and appealed the validity of his sentence. At the time of the offense, Missouri law absolutely barred prosecution for first-degree murder once a plea of guilty had been entered to second-degree murder. During the pendency of Kring's appeal, the law changed. Kring's appeal was successful, and his sentence was vacated. On remand, Kring was tried for first-degree murder and was convicted. A majority of the United States Supreme Court concluded that Kring was entitled to the

benefit of the law in effect at the time of his offense. The Court concluded that the challenged statute involved a "substantial right which the law gave the defendant at the time to which his guilt relates...." 107 U.S. at 232, 2 S.Ct. at 452.

In *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), Thompson was entitled to a jury of twelve persons under federal law applicable at the time of the alleged crime. Prior to trial, Thompson became subject to a state law that allowed trial before a jury of eight persons. The Court in *Thompson v. Utah* held that the retroactive change in jury size was prohibited by the *ex post facto* clause because it took "from the accused a substantial right belonging to him when the offenses were committed." 170 U.S. at 351–52, 18 S.Ct. at 623.

Thus, in both *Kring* and *Thompson v. Utah*, the Court invalidated retroactive laws that had no direct effect on the elements of the offense or on the applicable penalty. While the vitality of these decisions may be subject to some doubt, neither case has been expressly overruled. Their perseverance as nominally valid precedent lends weight to the view that the limits of the *ex post facto* clause cannot be drawn as narrowly as the state would suggest.

■ We therefore decline to hold that a law is substantive for *ex post facto* purposes only when it alters the elements of an offense or its prescribed penalties. In our view, a substantive change in the law is

---

2. Similarly, in *Kring v. Missouri*, 107 U.S. at 250–51, 2 S.Ct. at 467–68, the Court stated, in pertinent part:

> It is doubtless quite true that it is difficult to draw the line in particular cases beyond which legislative power over remedies and procedure cannot pass without touching upon the substantial rights of the parties affected, as it is impossible to fix that boundary by any general words.

This passage, as well as the passages we have quoted in the text from *Beazell v. Ohio, Mallett v. North Carolina,* and *Thompson v. Utah,* also illustrates that, contrary to the assertions of the state in this appeal, the United States Supreme Court has never sharply distinguished between a "substantive" right and a "substantial" right. Indeed, in the quoted passages, the Court seems to have used the words "substantive" and "substan-

tial" almost interchangeably. Such usage on the part of the court has continued to the present date. For example, in *Weaver v. Graham,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12, the Court recently said: "Alteration of a substantial right, however, is not really procedural, even if the statute takes a seemingly procedural form."

The Supreme Court's interchangeable use of "substantive," and "substantial" undermines the state's argument that significance should be attributed to Judge Carpeneti's choice of the word "substantial" instead of the word "substantive." If the state is correct that Judge Carpeneti's use of the word "substantial" indicates confusion as to the appropriate *ex post facto* standard, then it appears that the United States Supreme Court has, itself, frequently suffered from the same confusion.

one that works a disadvantage to the accused either directly, by altering the requisite elements of the offense, or indirectly, by impairing important rights that are related to the substance of the offense—those rights meant to assure fairness in the ultimate adjudication of guilt or innocence. As the Supreme Court has held: "It is sufficient now to say that a statute belongs to ... [the protected] class which by its necessary operation and 'in its relation to the offense, or its consequences, alters the situation of the accused to his disadvantage.'" *Thompson v. Utah,* 170 U.S. at 351, 18 S.Ct. at 623 (citations omitted).[3]

We must next inquire whether the *ex post facto* clause, so construed, encompasses a retroactive change in a criminal statute of limitations. This inquiry leads directly to the state's second argument. The state contends that the compelling weight of authority in other jurisdictions establishes that, for *ex post facto* purposes, a criminal statute of limitations is procedural rather than substantive. The state also contends that Alaska cases, although they do not address the precise issue, point to the same conclusion.[4]

**3.** Conversely, those matters that do not touch upon the substance of an offense or its prescribed penalties are deemed procedural:

But matters of possible defense ... which are arbitrary and technical, introduced for public convenience or from motives of policy, which do not affect the substance of the accusation or defense ... are continually subject to the legislative will....

*Kring v. Missouri,* 107 U.S. 221, 250–51, 2 S.Ct. 443, 467–68, 27 L.Ed. 506 (1883) (dissenting opinion).

**4.** Furthermore, although it recognizes that the United States Supreme Court has never squarely decided whether retroactive application of a change in a criminal statute of limitations is barred by the *ex post facto* clause, the state contends that resolution of this issue is foreshadowed by *United States v. Powers,* 307 U.S. 214, 59 S.Ct. 805, 83 L.Ed. 1245 (1939). In *Powers,* the defendants were charged with violating a statute whose provisions were originally set to expire on June 16, 1937, unless extended by Congress. On June 14, 1937, Congress extended the statute for two years. The defendants were charged with committing violations that occurred during the period in which the original statute was in effect, but the charges

The leading case to decide the effect of a retroactive change in a criminal statute of limitations is *Falter v. United States,* 23 F.2d 420 (2d Cir.), *cert. denied,* 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928). There the court, in an opinion by Judge Learned Hand, concluded that extending a statute of limitations while the original statute is still running is permissible, but that revival of an already expired statute would be impermissible:

Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or if it does, the stake forgives it.

23 F.2d at 425–26.

Judge Hand's conclusory reference to "our feelings of justice and fair play" has

were brought after the statute was extended. Under federal law, no prosecution would have been allowed had the original statute not been extended, even if the alleged offenses were committed before its expiration. In the Supreme Court, the defendants argued, *inter alia,* that the statutory extension amounted to an *ex post facto* law, because its effect was to extend the time within which they could be prosecuted. The Court rejected this argument, summarily concluding that the change in the law was a procedural one.

Although the situation of the defendants in *Powers* is in some respect similar to Creekpaum's situation in the present case, the similarity is superficial. At issue in *Powers* was a clearly procedural rule of law that precluded the government from prosecuting the violation of a statute that was no longer in effect. This rule was entirely unrelated to the elements of the offense or to the basic fairness of the adjudicative process; nor did it operate to confer any substantial right on violators. By contrast, as will later be discussed in this opinion, the statute of limitations in a criminal case is enacted by the legislature for the benefit of the accused and with the express purpose of assuring the ultimate fairness and integrity of the adjudicative process.

been criticized by academic commentators. *See* L. Tribe, *American Constitutional Law,* at 484 n. 9 (1977); Note, *Ex Post Facto Limitation on Legislative Power,* 73 Mich.L.Rev. 1491, 1512 n. 78 (1975). Nevertheless, almost all courts that have considered this issue have reached the same result. Most of these decisions place unquestioning reliance on the vested rights analysis articulated in *Falter.* They reason that until a defendant has a vested right to be free from prosecution because the statute of limitations has expired, it is not unfair for the legislature to extend the statute. *See, e.g., Hill v. State,* 171 S.W.2d 880, 884 (Tex.Crim.App.1943); *People v. Smith,* 171 Cal.App.3d 997, 217 Cal.Rptr. 634, 636 (5 Dist.1985); *People v. Sample,* 161 Cal.App.3d 1053, 208 Cal.Rptr. 318, 320 (5 Dist.1984); *People v. Midgley,* 714 P.2d 902 (Colo.1986); *People v. Holland,* 708 P.2d 119 (Colo.1975); *People v. Isaacs,* 37 Ill.2d 205, 226 N.E.2d 38, 46–47 (1967); *State v. Merolla,* 100 Nev. 461, 686 P.2d 244 (1984); *State v. Norton,* 675 P.2d 577, 586 (Utah 1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1923, 80 L.Ed.2d 470 (1984).

In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), however, the United States Supreme Court refused to apply the vested rights theory to *ex post facto* issues, holding that, while the concept of vested rights is a useful one for due process analysis, it is essentially irrelevant to the question of whether a change in the law is substantive or procedural for *ex post facto* purposes. *Weaver* dealt with a statute altering the amount of "good time" credit received by Florida prisoners. Considering the effect of the challenged legislation, the Supreme Court stated:

> The presence or absence of an affirmative, enforceable right is not relevant, however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham,* 450 U.S. at 30–31, 101 S.Ct. at 965 (footnote omitted).

*Weaver* significantly erodes the rational underpinnings of *Falter* and its progeny. Moreover, as Judge Carpeneti correctly noted, almost all of the cases on this issue that have not expressly adopted *Falter's* vested rights analysis have either offered no explanation for their rulings or have cited other cases that do rely on the vested rights analysis. *See, e.g., United States ex rel Masserella v. Elrod,* 682 F.2d 688, 689 (7th Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983); *Clements v. United States,* 266 F.2d 397, 399 (9th Cir.), *cert. denied,* 359 U.S. 985, 79 S.Ct. 943, 3 L.Ed.2d 934 (1959); *People v. Pfitzmayer,* 72 Misc.2d 739, 340 N.Y.S.2d 85, 87–88 (N.Y.Co.Ct.1972) (quoting *People ex rel Reibman v. Warden of County Jail at Salem,* 242 A.D. 282, 275 N.Y.S. 59 (1934).

Only Florida has squarely held that a criminal statute of limitations vests a substantive right and is not a procedural matter. *State ex rel Manucy v. Wadsworth,* 293 So.2d 345, 347 (Fla.1974). In *Manucy* the Florida court stated:

> A review of the authorities indicates that the statute of limitations in force and effect at the time of the incident giving rise to the criminal charges is controlling in determining whether prosecution has been timely commenced.

*See also Rubin v. State,* 390 So.2d 322 (Fla.1980).

The state vigorously criticizes *Manucy,* arguing that the authorities cited in that case do not support its conclusion and that, in any event, the decision was result-oriented. Indeed, the state's argument has some merit. On its facts, *Manucy* is a curious

case. The defendant was charged in 1972 with a murder committed in 1968. At the time of the offense, murder was a capital crime. There was no statute of limitations for capital crimes, but noncapital offenses were required to be prosecuted within two years of their commission. In July of 1972, the United States Supreme Court decided *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), effectively invalidating Florida's death penalty statute. The Florida legislature was unable to reenact a new death penalty provision until October of 1972. Manucy was arrested and charged in the interim between the decision in *Furman* and the date of enactment of the new statute. He argued that the two-year statute of limitations for noncapital offenses should apply to him, barring prosecution. *State ex rel Manucy v. Wadsworth,* 293 So.2d at 346–47. The Florida Supreme Court disagreed, concluding that the statute of limitations conferred a substantive right, which attached at the time of the alleged crime. *Id.* at 347–48.

Despite the peculiar factual circumstances of *Manucy,* we believe the case has at least some persuasive force. Even though the effect of its decision was to allow the defendant to be prosecuted, the Florida Supreme Court expressly recognized that its holding would in most cases have the effect of barring prosecutions, since it would preclude retroactive application of extensions in the statute of limitations. Moreover, the Florida court's view that a statute of limitations is a substantive right finds general support in other states, though not in the context of an *ex post facto* analysis. *See, e.g., State v. French Funeral Home,* 185 N.J.Super. 385, 448 A.2d 1037, 1039 (1982); *People v. Zamora,* 18 Cal.3d 538, 134 Cal. Rptr. 784, 557 P.2d 75, 80 (1976); *State v. Michael,* 2 Md.App. 750, 237 A.2d 782, 785 n. 4 (1968); *State v. Fogel,* 16 Ariz.App. 246, 492 P.2d 742, 744 (1973).

On balance, we find the case law from other jurisdictions to be inconclusive. Apart from *Falter's* vested rights analysis, which, in retrospect, seems questionable, we find little in the case law to persuade us of a sound basis for concluding that a criminal statute of limitations must be regarded as merely procedural for *ex post facto* purposes. We turn next for guidance to the Alaska cases.

Although the Alaska Supreme Court has never decided the applicability of the *ex post facto* clause to a retrospective extension of the statute of limitations, it has held, in another context, that a civil statute of limitations is substantive, not procedural. *See Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035 (Alaska 1981).

The precise issue in *Nolan* was whether a civil statute of limitations was a matter of substantive law within the legislature's authority or a procedural matter within the supreme court's rule-making powers. *Id.* at 1045. After noting the difficulty of characterizing any law as entirely procedural or substantive, the court concluded that the statute of limitations was substantive:

> It is generally recognized that the purpose of statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injustice which may result from prosecution of stale claims. Statutes of limitations attempt to protect against the difficulties caused by lost evidence, faded memories and disappearing witnesses.

*Id.* (quoting *Byrne v. Ogle,* 488 P.2d 716, 718 (Alaska 1971)).

The state attempts to distinguish the holding in *Nolan,* arguing that a statute which is substantive for purposes of the court's rule-making authority is not necessarily substantive for purposes of the *ex post facto* clause. We recognize that the issue in *Nolan* differed from the issue presented in this case. And as the supreme court pointed out in *Nolan,* the distinction between substance and procedure may well differ with the context in which that distinction must be drawn. Nevertheless, *Nolan* provides useful guidance because it underscores the significance of the statute of limitations as a legislatively conferred right intended to assure fairness in the adjudicative process.

The fact that *Nolan* involved a civil rather than a criminal statute of limitations does not diminish its significance. To the contrary, other cases decided by our supreme court strongly suggest that the statute of limitations' role as a safeguard for the accused in criminal cases is particularly significant. Thus, the court has held that the criminal statute of limitations is jurisdictional, barring the superior court's authority to try a case, even with the consent of the accused. *See Padie v. State*, 557 P.2d 1138, 1140 (Alaska 1976). *See also State v. Williams*, 681 P.2d 313, 314–19 (Alaska 1984).

Other courts have also expressed the view that the statute of limitations plays a particularly important role in criminal cases because it protects the accused against unfair disadvantage:

Statutes of limitation in criminal cases are designed primarily to protect the accused from the burden of defending himself against charges of long completed misconduct. Unlike a statute of limitation in a civil case, a criminal statute of limitation is not a mere limitation upon the remedy, but a limitation upon the power of the sovereign to act against the accused.

*State v. Fogel*, 16 Ariz.App. 246, 492 P.2d 742 (1972) (citation omitted). *See also Price v. Maxwell*, 140 Ariz. 232, 681 P.2d 384 (1984).

In further opposition to *Nolan v. Sea Airmotive, Inc.*, the state cites *State v. Williams*, 681 P.2d 313, 314–19 (Alaska 1984). In *Williams*, the Alaska Supreme Court held that the speedy trial provision of Criminal Rule 45 was procedural rather than substantive, and that it was therefore within the scope of the court's rule-making power. The court reasoned that the speedy trial rule merely operated as a procedural implementation of the constitutionally guaranteed right to a speedy trial.[5]

Here, the state likens the statute of limitations to the speedy trial rule. The state asserts that the statute of limitations is merely a procedural implementation of the constitutional right to dismissal for unreasonable preindictment delay.

In our view, the analogy is not apt. It is true that the statute of limitations, the constitutional right to a speedy trial, and the constitutional prohibition of unreasonable preindictment delay all address facets of the same broad problem: unfairness resulting from delay in criminal proceedings. Yet each legal rule is occupied with a distinctly different aspect of the general problem.

The right to a speedy trial applies only after the bringing of a formal charge. It is concerned with protecting against prolonged pretrial incarceration and against the embarrassment and uncertainty engendered by lengthy delays in the date of trial. *See generally Rutherford v. State*, 486 P.2d 946 (Alaska 1971); *Glasgow v. State*, 469 P.2d 682 (Alaska 1970).

In contrast, the prohibition against preindictment delay protects the accused from improper or unreasonable conduct by the government in the bringing of a criminal charge. Although this prohibition can operate to preclude conviction after a relatively short period of delay, it is triggered only if the accused can demonstrate that the delay in filing charges was unreasonable and resulted in actual prejudice. *See Alexander v. State*, 611 P.2d 469, 473–74; *Coffey v. State*, 585 P.2d 514, 519–20 (Alaska 1978).

The statute of limitations concerns itself with the opposite end of the spectrum of preindictment delay. It is concerned with defining the outer limits of delay, beyond which prosecution will no longer be tolerated, even when the government has exercised good faith in attempting to file

---

**5.** In connection with this argument, the state also relies on *Main v. State*, 668 P.2d 868, 871–73 (Alaska App.1983). In *Main*, this court held that the right to a peremptory challenge of a judge, under Alaska Criminal Rule 25, is a procedural implementation of the statutory right to a peremptory challenge described in AS 22.20.-022. On this basis, we concluded that differences between the rule and the statute were procedural in nature and did not exceed in scope the supreme court's rule-making authority.

promptly and even when the accused is incapable of identifying specific prejudice resulting from the delay. By enacting a statute of limitations, the legislature serves notice that a person who contemplates the commission of an act which might be construed as criminal must be prepared to defend the act for the period specified in the statute, but no longer. In enacting such a statute, the legislature recognizes that basic fairness militates against requiring the accused to defend his acts once the period of limitation has expired.

It should be readily apparent, then, that the statute of limitations cannot accurately be characterized as a mere procedural implementation of the constitutional protection against unreasonable preindictment delay. While these rules are to some extent complementary in operation and effect, they function independently. Neither is a procedural implementation of a substantive right embodied in the other; each operates as a substantively distinct safeguard against delay.

Nor is it determinative that the protection against unfair preindictment delay is constitutionally mandated, while the statute of limitations is legislatively bestowed. Just as the legislature is empowered to define the elements of an offense and to create defenses applicable thereto, so it can confer on the accused related rights limiting the circumstances in which guilt may be established. When the legislature confers such rights because, in its view, they are necessary to assure the integrity of the adjudicative process and to protect the accused from the possibility of an unfair conviction, those rights are, we believe, substantive rights for *ex post facto* purposes.[6]

■ In summary, although we find the issue to be a close one, we are persuaded that a criminal statute of limitations is not merely procedural, but operates as a substantive right for *ex post facto* purposes. While such a statute does not directly establish the elements of an offense, it is closely related thereto, since it limits the circumstances under which guilt may be found and is aimed at preserving the accuracy and basic integrity of the adjudicative process in which the guilt or innocence of the accused is ultimately decided. We hold, therefore, that the *ex post facto* clauses of the Alaska and United States Constitutions prohibit a retrospective change in the statute of limitations in a criminal case when the change operates to the detriment of the accused.

The order of dismissal entered by the superior court is AFFIRMED.

SINGLETON, J., dissents.

SINGLETON, Judge, dissenting.

On March 12, 1980, Robert C. Creekpaum sexually assaulted a child. At that time, the statute of limitations for such an offense was five years, so that Creekpaum could have been prosecuted at any time up until March 12, 1985. *See* AS 12.10.010. Creekpaum was not charged with this offense, however, until May 17, 1985, roughly sixty days after the original statute of limitations had expired. But the legislature, in 1983, had extended the statute of limitations. *See* AS 12.10.020(c). The question is, could the amended statute of limitations be applied to Creekpaum, thus permitting his prosecution? I believe it could, without violence to the constitution, and therefore dissent from this court's decision which requires dismissal of the prosecution.

I admit at the outset that the cases are somewhat confusing regarding the applicable principles. Nevertheless, I believe this confusion can be dispelled if we recognize that in order to enact a retrospective statute, that adversely affects a criminal defendant, the legislature must jump three hurdles: first, it must make its intention clear as indicated in AS 01.10.100(a); second, it must satisfy the requirements of the *ex post facto* clauses of the Alaska Consti-

---

**6.** *Cf. Weaver v. Graham,* 450 U.S. 24, 30–31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981) ("[E]ven if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the [*ex*

*post facto* ] Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.").

tution Article I, section 15 and the United States Constitution Article 1, section 10; and, third, it must satisfy substantive and procedural due process guaranteed in Alaska Constitution Article 1, section 7 and in the Fourteenth Amendment of the United States Constitution.[1]

The majority concedes that the legislature expressly intended to give retrospective application of the amendment to the statute of limitations, thus satisfying AS 01.10.100(a). Consequently, we are concerned only with the *ex post facto* and due process clauses of the respective constitutions. The cases cited by the majority establish that the courts have not always kept discussions of the *ex post facto* and due process clauses separate in their opinions. Nevertheless, I believe those provi-

sions can be distinguished if we recognize that a statute violates the *ex post facto* prohibition if, and only if: (1) it makes conduct criminal which would have been innocent when undertaken; (2) it aggravates a crime or makes it greater than it was when committed; (3) it permits imposition of a different and more severe punishment than was permissible when the crime was committed; and, (4) it changes the legal rules of evidence to permit less or different testimony to convict the offender than was required when the crime was committed. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).[2] On the other hand, it violates due process if it impinges upon a right that vested prior to the enactment. *See, e.g., Weaver v. Graham,* 450 U.S. 24, 29–30, 101 S.Ct. 960, 964–65, 67

---

**1.** Substantive due process, in context, prevents statutory elimination of vested rights. In addition, the state and federal due process clauses protect reasonable expectations by precluding "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application...." *State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 531 (Alaska 1980) (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). Retrospective changes in the elements of a crime or the prescribed punishment violate a person's ability to predict the legal consequences of her or his conduct in a similar way. It must be remembered that the earlier United States Supreme Court cases which defined the perimeters of the *ex post facto* clause preceded the enactment of the fourteenth amendment and the judicial development of the concept of substantive due process. These early cases would probably have been treated as "due process" rather than *"ex post facto"* cases had they arisen at a later time. *See, e.g., Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), and its progeny.

**2.** "The proscription against *ex post facto* laws insures that citizens receive fair warning of the potentially criminal nature of their conduct and restricts governmental power by restraining arbitrary and potentially vindictive legislation." 2 C. Sands, *Sutherland Statutory Construction,* § 42.01 at 441 (4th ed. 1986). It is not contended that the legislature arbitrarily or vindictively set out to get Creekpaum by passing the legislation in question. In fact, had the government been aware of Creekpaum's conduct in 1983 he could have been prosecuted under the existing statute of limitations. Thus our concern must be: did the change in the law, if applied to

Creekpaum, deprive him of "fair warning," *i.e.,* frustrate any reasonable expectation he might have had at the time he first contemplated commission of his crime? In order to answer this question and understand Justice Chase's intention in *Calder,* it is useful to refer to O.W. Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457 (1897). Holmes reasoned that "[t]he prophecies of what the court will do in fact, and nothing more pretentious, are what I mean by the law." *Id.* at 460–61. He prepared his listeners for his thesis differentiating law from morals as follows:

> If you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict, not as a good one, who finds his reasons for conduct, whether inside the law or outside of it, in the vaguer sanctions of conscience.

*Id.* at 459.

While the constitution was ratified in 1789 and *Calder* was decided in 1798, I believe the *ex post facto* clause, as interpreted in *Calder,* was intended to protect the "bad man" in his reasonable predictions regarding the criminal consequences of his behavior. I also believe that the cases can be reconciled in this way. Clearly, Creekpaum, when contemplating sexual assaults on children, would want to know what conduct was criminal and what punishment might be forthcoming. He might also want to know what evidence was necessary for conviction. I cannot believe, however, that he would reasonably allow a decision whether to molest a child, to rest on whether a prosecution could be brought in five years or five years and sixty days. If he would, I do not believe that such a decision is one protected by the *ex post facto* clause.

L.Ed.2d 17 (1981) (evaluating whether a right has vested is important for claims under the due process clause, which protects only pre-existing entitlements).

In this case, Creekpaum's crime occurred in March 1980; a five-year statute of limitations applied. *See* AS 12.10.010. He was thus prosecutable until March 1985. The legislative extension of the statute of limitations occurred in 1983, while prosecution of Creekpaum was still possible. *See* AS 12.10.020(c). Consequently, it cannot be said that the extension of the statute of limitations: changed the elements of his offense to make his innocent actions into criminal ones; aggravated his crime or made it greater than it was when he committed it; permitted imposition of a different and more severe punishment than was permissible when the crime was committed; or, changed the legal rules to permit less or different testimony to convict him. Under the circumstances, the extension of the statute of limitations clearly did not violate the *ex post facto* clause of the state or federal constitutions. Additionally, since it has not been demonstrated to have violated any vested right of Creekpaum, he has not been deprived of due process. His prosecu-

tion should therefore be permitted. *See State v. Hodgson*, 44 Wash.App. 592, 722 P.2d 1336, 1342–43 (1986).

In conclusion, I believe the cases can best be explained as holding that the *ex post facto* clauses of the state and federal constitutions are intended to protect an individual's ability to know the law so that he can conform his conduct to its requirements, or, should he choose to violate the law, so that he can anticipate the consequences of a violation. Changes in the statutes of limitation that are made prior to the time that the original statute expires do not frustrate such reasonable predictions and resulting expectations. It is this factor which, in my view, accounts for the virtually unanimous determination by reviewing courts that such changes do not violate the constitutions.[3] I would reverse the trial court's dismissal of the prosecution against Creekpaum.

---

**3.** There is nothing in *Weaver,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), that undermines this analysis. In *Weaver,* the court found that retrospective changes in the manner of calculating good time "substantially alters the consequences attached to a crime already completed and therefore changes 'the *quantum* of punishment.'" 450 U.S. at 33, 101 S.Ct. at 966 (emphasis added) (citation omitted). The invalidated statute therefore fell within the core of the prohibition announced in *Calder* (*i.e.,* a retrospective change in the punishment provided). It is important to stress that the court in *Weaver*

recognizes that the purpose of the constitutional protection is to give fair warning and avoid vindictive and arbitrary legislation. 450 U.S. at 28–29, 101 S.Ct. at 963–64. As we have seen, a change in the statute of limitations that applies equally to everyone and that does not affect cases as to which the existing statute has already expired cannot be, in context, arbitrary or vindictive. Thus "fair notice" is the only constitutional purpose implicated in the *ex post facto* clauses as they apply to the extension of the statute of limitations which we are considering in this case. *See* n. 1, *supra.*