**STATE of Alaska, Petitioner,**

v.

**Robert C. CREEKPAUM, Respondent.**

**STATE of Alaska, Petitioner,**

v.

**Robert E. MURRAY, Respondent.**

**Nos. S–2054, S–2208.**

Supreme Court of Alaska.

April 15, 1988.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for petitioner.

Monte L. Brice, Brice & Steinmann, Juneau, for respondents.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

### OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION.

On March 12, 1980, Robert Creekpaum allegedly sexually assaulted a nine year old girl. On May 17, 1985, a grand jury in Juneau returned an indictment against Creekpaum for "a class A felony ... in violation of [former] AS 11.41.410(a)." [1] Creekpaum filed a motion to dismiss the case on June 20, 1985, on the grounds that the applicable statute of limitations had run and the indictment was untimely.[2]

---

**1.** Repealed, ch. 78, § 10, SLA 1983.

**2.** On June 11, 1987, the state filed a petition for hearing in the case of *State v. Murray*, asking

At the time of Creekpaum's alleged offense in March 1980, the applicable statute of limitations, AS 12.10.010, specified a five year period in which the indictment was to be found, or the information or complaint instituted.[3]  In 1983, before the five year period of limitations had run on Creekpaum's alleged offense, the legislature enlarged the period for bringing charges of sexual abuse of a minor.  Alaska Statute 12.10.020(c) provides:

> Even if the general time limitation has expired, a prosecution under AS 11.41.-410–11.41.460 ... for an offense committed against a person under the age of 16 may be commenced within one year after the crime is reported to a peace officer or the person reaches the age of 16, whichever occurs first.  This subsection does not extend the period of limitation by more than 5 years.[4]

Creekpaum was indicted five years and two months after the alleged offense.  He argues that his indictment was untimely under AS 12.10.010, and that AS 12.10.-020(c), the extended statute of limitations, would amount to an unconstitutional[5] ex post facto law if applied to his case.  The state concedes that if the statute of limitations in effect at the time of the incident governs the case, the indictment must be dismissed.  It argues, however, that the later extension of the limitations period in AS 12.10.020(c) governs, and that Creekpaum was timely indicted.

The superior court agreed with Creekpaum's argument that, as applied to him, the changed statute of limitations was an unconstitutional ex post facto law.  The court of appeals upheld the superior court's ruling by a 2–1 vote with Judge Singleton dissenting.  State v. Creekpaum, 732 P.2d 557 (Alaska App.1987).  We reverse the court of appeals and hold that extension of a criminal statute of limitations before the original period of limitation has run is not an unconstitutional ex post facto law under the constitutions of either Alaska or the United States.

II.  DISCUSSION.

Our decision is based primarily upon our reading of Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).  Both the superior court and the court of appeals found Weaver to be dispositive of Creekpaum's case, and ruled that the extended statute of limitations was unconstitutional as applied to Creekpaum.

The petitioner in Weaver challenged on ex post facto grounds a change in Florida's statutory formula for calculating "good time" reductions in prisoners' sentences.  The change made it more difficult to accrue good time reductions, thereby increasing the "quantum of punishment" suffered by each inmate.[6]  The Supreme Court held that the statute violated the ex post facto prohibition because it "makes more onerous the punishment for crimes committed

---

"this Court to accept review of Murray's case, and to allow the State to file one consolidated brief in these two cases."  On August 19, 1987, counsel for Murray filed a Statement in Lieu of Brief, in which counsel stated, "[T]he specific facts are not materially different from those in Creekpaum.  Respondent Murray, therefore, intends to rely on Respondent Creekpaum's brief and hereby incorporates his arguments."  The two cases were consolidated and are decided in this opinion.

3.  AS 12.10.010 reads:
    General time limitations.  A prosecution for murder may be commenced at any time.  Except as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not murder, unless the indictment is found or the information or complaint is instituted within five years next after such offense shall have been committed.

4.  The legislature expressly provided that the new statute of limitations would have retroactive effect.  Chapter 78, § 11, SLA 1983 states:
    Section 7 [AS 12.10.020(c) ] of this Act applies to offenses committed during or after the five years immediately before the effective date of this Act.

5.  The state argues the constitutionality of this statute based on article I, section 10 of the United States Constitution.  Creekpaum refers mostly to the United States Constitution, but also argues that the Alaska Constitution, article I, section 15, provides broader protection.

6.  The new formula would have added over two years to Weaver's sentence.  Weaver, 450 U.S. at 27, 101 S.Ct. at 963, 67 L.Ed.2d at 22.

before its enactment." 450 U.S. at 36, 101 S.Ct. at 968, 67 L.Ed.2d at 27.

Creekpaum argues that *Weaver* introduced a new analytic approach to *ex post facto* cases, one that discarded the traditional "vested rights" approach. He argues that the premise behind the vested rights approach was "that a criminal defendant's right to rely upon the statute of limitations as it existed when the alleged crime was committed applies only when that right has vested." [7] He further argues that in place of the vested rights approach, the Court focused only on two criteria: whether the law was retrospective and whether it disadvantaged the offender affected by it.

In *Weaver* the Court did note that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Id.* at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23. The Court clarified that statement in a footnote:

> When a court engaged in *ex post facto* analysis, which is concerned solely with whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred, it is irrelevant whether the statutory change touches any vested rights.

*Id.*, n. 13. The Court focused on the critical considerations of the *ex post facto* doctrine:

> The presence or absence of an affirmative, enforceable right is not relevant, however, to the *ex post facto* prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Id.* at 30–31, 101 S.Ct. at 965, 67 L.Ed.2d at 24.

The Court then considered the Florida law in light of the two considerations: whether it was retrospective and whether it was more onerous than the law in effect on the date of Weaver's offense. With regard to the first criterion, the Court found:

> For prisoners who committed crimes before its enactment, § 944.275(1) substantially alters the consequences attached to a crime already completed, and therefore changes "the quantum of punishment." Therefore, it is a retrospective law which can be constitutionally applied to petitioner only if it is not to his detriment.

*Id.* at 33, 101 S.Ct. at 966, 67 L.Ed.2d at 25 (citing *Dobbert v. Florida,* 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977)).

The Court next determined that the new law operated to Weaver's detriment:

> Under this inquiry, we conclude § 944.275(1) is disadvantageous to petitioner and other similarly situated prisoners. On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison.

*Id.* 450 U.S. at 33, 101 S.Ct. at 966, 67 L.Ed.2d at 26. The Court accordingly held that the new statute violated the *ex post facto* prohibition of the Constitution.[8]

In *Miller v. Florida,* 482 U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the Court

---

**7.** *See, e.g., Falter v. United States,* 23 F.2d 420, 425–26 (2d Cir.), *cert. denied,* 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003 (1928).

**8.** Both concurring opinions, one by Justice Blackmun, which Chief Justice Burger joined,

and the other by Justice Rehnquist, also focused on the onerousness of the new law, which both writers found to be less obvious than did the majority. *Weaver,* 450 U.S. at 37–38, 101 S.Ct. at 968–69, 67 L.Ed.2d at 28–29.

relied upon its analysis in *Weaver* to conclude that a change in Florida's sentencing guidelines between the time of Miller's offense and his sentencing violated the *ex post facto* clause.

> As was stated in *Weaver*, to fall within the *ex post facto* prohibition, two critical elements must be present: first, the law "must be retrospective, that is, it must apply to events occurring before its enactment"; and second, "it must disadvantage the offender affected by it."

At —, 107 S.Ct. at 2451, 96 L.Ed.2d at 360 (quoting *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964, 67 L.Ed.2d at 23).

The Court also relied on *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), to emphasize "that no *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.'" *Miller*, 482 U.S. at —, 107 S.Ct. at 2451, 96 L.Ed.2d at 360 (quoting *Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298, 53 L.Ed.2d at 356).[9] As in *Weaver*, the Court in *Dobbert* focused on the quantum of punishment which the petitioner would suffer under the new law:

> The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.

432 U.S. at 293–94, 97 S.Ct. at 2298, 53 L.Ed.2d at 356.

The Court in *Miller* also relied heavily on traditional *ex post facto* considerations as applied in *Dobbert:*

> [T]his is not a case where we can conclude, as we did in *Dobbert*, that "[t]he crime for which the present defendant was indicted, the punishment prescribed therefore, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute."

482 U.S. at —, 107 S.Ct. at 2454, 96 L.Ed.2d at 363 (quoting *Dobbert*, 432 U.S. at 294, 97 S.Ct. at 2298, 53 L.Ed.2d at 357). Rather, "[t]he law at issue in this case, like the law in *Waver*, [sic] 'makes more onerous the punishment for crimes committed before its enactment.'" *Miller*, 482 U.S. at —, 107 S.Ct. at 2454, 96 L.Ed.2d at 363 (quoting *Weaver*, 450 U.S. at 36, 101 S.Ct. at 968, 67 L.Ed.2d at 27).

Viewed in light of *Miller, Weaver* is not a major departure from prior *ex post facto* doctrine. It does not "call[] ... into serious and substantial question" all the prior cases on which the state relies, as Creekpaum argues. The interpretation of *Weaver* urged by the state and by Judge Singleton's dissent conforms to the interpretation given to it by the Supreme Court. That is, the holding in *Weaver* falls "within the core of the prohibition announced in *Calder* [*v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798) ]," *Creekpaum*, 732 P.2d at 570 n. 3 (Singleton, J., dissenting), because it focused on the change in the quantum of punishment that Weaver suffered as a result of the new law.

This analysis leads us to apply the two step test prescribed in *Weaver* and *Miller*. First, the law is explicitly retroactive.[10] Second, Creekpaum argues that the new law is more onerous because he remains liable for prosecution from which he would have been immune under the old law. This argument is not persuasive in light of the specifically enumerated criteria employed in traditional *ex post facto* analysis.

For example, the Supreme Court's description of the effect of the statute in *Dobbert*, quoted above, applies equally to the new statute of limitations in the instant case: "The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute." 432 U.S. at 294, 97 S.Ct. at 2298, 53 L.Ed.2d at 357 (quoting *Hopt v.*

---

**9.** In *Dobbert* the Court found no *ex post facto* violation in the imposition of the death penalty under the statute in effect at Dobbert's trial, even though the killings had occurred at a time when the death penalty was governed by statutes found to be unconstitutional between the time of the offense and the trial.

**10.** *See supra* note 4.

*Utah,* 110 U.S. 574, 589–90, 4 S.Ct. 202, 209–10, 28 L.Ed. 262, 268 (1884)), *quoted in Miller,* 482 U.S. at ——, 107 S.Ct. at 2454, 96 L.Ed.2d at 363. Judge Singleton's dissent similarly specifies settled criteria which a law must meet before it will be held unconstitutional under the *ex post facto* clause.

> [A] statute violates the *ex post facto* prohibition if, and only if: (1) it makes conduct criminal which would have been innocent when undertaken; (2) it aggravates a crime or makes it greater than it was when committed; (3) it permits imposition of a different and more severe punishment than was permissible when the crime was committed; and, (4) it changes the legal rules of evidence to permit less or different testimony to convict the offender than was required when the crime was committed. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

*Creekpaum,* 732 P.2d at 569 (Singleton, J., dissenting). Under either set of considerations, the changed statute of limitations does not violate the *ex post facto* clause.[11] Furthermore, we see no reason to construe our parallel *ex post facto* prohibition—article I, section 15—differently from the federal provision.

Because the impact of *Weaver* is far more limited than Creekpaum and the courts below asserted, it does not nullify the precedent upon which the state relies in urging us to apply the extended statute of limitations to Creekpaum's case. We find one of those precedents, *Clements v. United States,* 266 F.2d 397 (9th Cir.), *cert. denied,* 359 U.S. 985, 79 S.Ct. 943, 3 L.Ed.

2d 934 (1959), particularly persuasive in this case.

At the time of Clements' offense (transporting a woman in interstate commerce for the purposes of prostitution), the statute of limitations was three years. Before the three years had expired, Congress amended the statute to allow prosecution to be commenced within five years of the offense. The Ninth Circuit, relying upon *United States v. Powers,* 307 U.S. 214, 59 S.Ct. 805, 83 L.Ed. 1245 (1939),[12] rejected Clements' *ex post facto* challenge to the law.

> The amendment was not an *ex post facto* law. It did not render a previously innocent act criminal. This statute did not aggravate or increase the punishment for the crimes here involved. The enactment did not alter the rules of evidence. An innocent act was not thereby penalized while assuming to regulate civil rights and remedies. Nor was the accused deprived thereby of some protection or defense previously available.

266 F.2d at 399.

The Seventh Circuit, relying on *Clements,* also explicitly held that the extension of a statute of limitations was "a 'merely procedural' change" which did "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *United States ex rel. Massarella v. Elrod,* 682 F.2d 688, 689 (7th Cir.1982) (quoting *Weaver,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12, 67 L.Ed.2d at 23 n. 12, and *Hopt,* 110 U.S. at 590, 4 S.Ct. at 210, 28 L.Ed. at 269), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1426,

---

**11.** *See also Miller,* 482 U.S. at ——, 107 S.Ct. at ——, 96 L.Ed.2d at 362 ("[E]ven if a law operates to the defendant's detriment ... no *ex post facto* violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.'") (quoting *Hopt,* 110 U.S. at 590, 4 S.Ct. at 210, 28 L.Ed. at 269).

**12.** In *Powers* a temporary criminal statute was extended for two years by Congress, two days before it would have expired on June 16, 1937. Powers and his codefendants were indicted in September 1938 for violations of the statute in 1935 and 1936. They argued that Congress had

passed an unconstitutional *ex post facto* law by extending the date for bringing a prosecution after the defendants had committed their crimes. The Supreme Court rejected their argument, noting that the amendment had been passed before the original act expired, and that it did not change "[t]he Act [as] ... a self-sustained and organic whole." 307 U.S. at 216, 59 S.Ct. at 807, 83 L.Ed. at 1248. The Court refused to accord protection under the *ex post facto* clause to whatever expectation the defendants had that they would be free from any possibility of criminal prosecution on June 16, 1937.

75 L.Ed.2d 787 (1983). The court upheld the extension in the face of an *ex post facto* challenge.

We are persuaded by these precedents that the extension of the statute of limitations for the offense with which Creekpaum has been charged, before the original period of limitations had expired, does not violate the federal or the Alaska Constitution.[13] We therefore REVERSE the decisions of the court of appeals.

---

**13.** Creekpaum also argued that, in Alaska, criminal statutes of limitations are substantive law, and not procedural. By virtue of that distinction, he argues, extension of criminal statutes of limitations would be unconstitutional in this state. We are not persuaded. For purposes of *ex post facto* analysis, we hold that criminal statutes of limitation are procedural.

The case on which Creekpaum relies, *Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1042–47 (Alaska 1981), does not support him. In *Nolan*, we focused on the distinction between "procedural" and "substantive" laws. We noted that the distinction "falls far short of drawing an unequivocal line." *Id.* at 1042. Further, we concluded that the challenged statute in that case was *procedural*, and we specifically rejected the argument, echoed by Creekpaum here, that the 1962 recodification project would have removed the law from the statutes if it were procedural. *Id.* at 1047 n. 25.